CC-1999-234                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Anselmo García Distributors<br>     Demandantes-Recurridos<br><br>          v.<br><br>Sucesión Anselmo García Sori<br>     Demandados-Peticionarios<br>_____Rosa<br>Rodríguez García<br>     Demandante-Recurrida<br><br>          v.<br><br>María Isabel García Peagudo y otros<br>     Demandados-Recurrentes | Certiorari<br><br>2001 TSPR 20 |

Número del Caso: CC-1999-234

Fecha: 21/febrero/2001

Tribunal de Circuito de Apelaciones:

                    Circuito Regional II

Juez Ponente:

                    Hon. José E. Broco Oliveras

Abogados de la Parte Recurrida:

                    Lcdo. Ernesto González Piñero
                    Lcdo. Yamil Vega Pacheco
                    Lcdo. José A. Pagán Nieves
                    Lcdo. Miguel A. Cordero González

Abogados de la Parte Recurrente:

                    Lcdo. Osvaldo Toledo Martínez
                    Lcdo. Pedro A. López Villafañe
                    Lcdo. Edilberto Berríos Dávila

     Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Anselmo García Distributors
      Demandantes-Recurridos

                    vs.

Sucesión Anselmo García Sorí
      Demandados-Peticionarios
_____          CC-1999-234          Certiorari
Rosa Rodríguez García
      Demandante-Recurrida

                    vs.

María Isabel García Peagudo
y Otros
      Demandados-Recurrentes

SENTENCIA

San Juan, Puerto Rico, a 21 de febrero de 2001.

En vista del criterio de una pluralidad de este Tribunal, se revoca la Sentencia del Tribunal de Circuito de Apelaciones del 14 de diciembre de 1998 y se modifica la Resolución dictada el 24 de junio de 1998 por el Tribunal de Primera Instancia a los efectos de reducir la cantidad concedida por dicho foro a dos mil dólares ($2,000.00) mensuales. Así modificada dicha Resolución, se confirma y se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Bayamón, para la continuación de los procedimientos.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El

Juez Asociado señor Hernández Denton emitió Opinión de Conformidad a la que se unen el Juez Presidente señor Andréu García y el Juez Asociado señor Corrada del Río.  El Juez Asociado señor Fuster Berlingeri emitió Opinión Concurrente a la que se une la Jueza Asociada señora Naveira de Rodón.  El Juez Asociado señor Rivera Pérez emitió Opinión Disidente.  El Juez Asociado señor Rebollo López no interviene.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Anselmo García Distributors
      Demandantes-Recurridos

         vs.

Sucesión Anselmo García Sorí
      Demandados-Peticionarios
_____

Rosa Rodríguez García             CC-1999-234      Certiorari
      Demandante-Recurrida

         vs.

María Isabel García Peagudo
y Otros
      Demandados-Recurrentes

Opinión de Conformidad emitida por el Juez Asociado señor Hernández Denton a la que se unen el Juez Presidente señor Andréu García y el Juez Asociado señor Corrada del Río.

San Juan, Puerto Rico, a 21 de febrero de 2001.

Toda vez que la revisión de este Tribunal se da contra la sentencia y no sus fundamentos, estamos conformes con la Sentencia emitida por este Tribunal al revocar la determinación del Tribunal de Circuito de Apelaciones y modificar la Resolución emitida por el Tribunal de Primera Instancia. Entendemos que la señora Rosa Rodríguez García debe recibir la cantidad de dos mil dólares ($2,000.00) mensuales como partida de alimentos antes de la división, partición y liquidación del caudal. Estimamos, además, que dicha partida debe concederse de modo provisional hasta tanto el foro de instancia le asigne a la Sra. Rodríguez García

una cuantía de alimentos a ser extraída de los frutos que genere el caudal hereditario y que sea proporcional a lo que le corresponda como legitimaria, independientemente de lo que le pertenezca por derecho propio.

I

Ante nos se encuentra en controversia, cuál es la naturaleza y el alcance del derecho de "alimentos" que reconoce el Artículo 583 del Código de Enjuiciamiento Civil, 32 L.P.R.A. 2443, al cónyuge viudo antes de la partición hereditaria.

El derecho de "alimentos" del viudo(a) o cónyuge supérstite que este Artículo reconoce, constituye más bien un adelanto o anticipo, que se sustrae de los frutos que genere el caudal, de lo que en su día podría corresponderle al dividirse el mismo.  El alcance y la naturaleza de este derecho representan un balance justiciero pues se toma en cuenta, por un lado, la necesidad de no dejar desprovisto de medios económicos al cónyuge supérstite en el periodo que precede la división del caudal; y por otro, el interés de evitar que se dilapide el caudal y se lesionen los derechos de otras personas que también tienen interés en el caudal hereditario indiviso.

II

Anselmo García Sorí se casó en segundas nupcias con Rosa Rodríguez García.  Antes de la celebración del matrimonio, las partes otorgaron capitulaciones matrimoniales, en virtud de las cuales rechazaron expresamente el régimen legal de gananciales.

Rodríguez García alega que durante su matrimonio estableció con su esposo, García Sorí, el negocio Anselmo García Distributors, Inc. y que éstos vendieron en el año 1995 dicha empresa, así como las acciones corporativas correspondientes al mismo, a Juan L. Rodríguez Ortiz y a su esposa, Daisy Robles Nieves (en adelante "los compradores").  Los compradores pagarían el precio total de venta mediante pagos mensuales.  García Sorí y Rodríguez García también arrendaron a los compradores el local donde operaba el negocio.

García Sorí falleció en 1996, dejando testamento abierto en el que nombró como herederos universales a sus dos únicos hijos, habidos en su primer matrimonio, Gabriel Anselmo García Peagudo y María Isabel García Peagudo. Nombró a esta última como albacea.

La albacea y la viuda, Rodríguez García, inicialmente acordaron que los compradores entregarían a la primera los pagos correspondientes a la venta del referido negocio y al arrendamiento.  Posteriormente, las partes renunciaron a dicho acuerdo, por lo que cada una de ellas reclamó el derecho a recibir dichos pagos.

Así las cosas, los compradores presentaron ante el Tribunal de Primera Instancia una "demanda de consignación de rentas y pagos de contrato de arrendamiento" para que el tribunal determinara quién tenía derecho a los pagos en cuestión.  Dentro de esa acción judicial, la señora Rodríguez García presentó al tribunal de instancia una solicitud de sentencia declaratoria, para que, se declarara propietaria del 50% del producto de la venta

de Anselmo García Distributors, Inc., y determinara que esa mitad no podía ser considerada como parte del caudal hereditario de García Sorí.

Posteriormente, dentro de la referida acción judicial, el Tribunal de Primera Instancia le asignó a la señora Rodríguez García una partida de $2,000 por concepto de alimentos, según le fue solicitado por ella.  La Sucesión de Anselmo García Sorí (en adelante, "la Sucesión") presentó recurso de certiorari ante el Tribunal de Circuito de Apelaciones en el que cuestionó dicha determinación del foro de instancia.  El tribunal apelativo revocó la resolución en cuestión y ordenó al Tribunal de Primera Instancia a celebrar una vista para determinar la cuantía a la que podría tener derecho la señora Rodríguez García en concepto de alimentos.

El Tribunal de Primera Instancia, según lo ordenado por el tribunal apelativo, celebró la correspondiente vista, tras la cual le ordenó a la Sucesión que pagara a la señora Rodríguez García la suma de $3,200 mensuales en concepto de alimentos *pendente-lite*, con cargo a la participación que en su día le pudiera corresponder en concepto de cuota viudal usufructuaria o en concepto de dueña del 50% producto de la venta del negocio y del alquiler de la propiedad en donde operaba el mismo.

Luego de varios incidentes procesales, la Sucesión presentó recurso de certiorari ante el Tribunal de Circuito de Apelaciones, el cual denegó el recuso solicitado. Inconforme, la Sucesión recurre ante nos.

III

## Procedencia de la solicitud de alimentos dentro del procedimiento de consignación y sentencia declaratoria

Antes de considerar la controversia medular, resulta pertinente analizar la procedencia de los mecanismos procesales utilizados por las partes en las diversas etapas del presente procedimiento judicial.

La presente acción se inició como un procedimiento de consignación, conocido comúnmente como "interpleader", reconocido en la Regla 19 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap.III R-19.[1]  Dicha regla permite que una persona al enfrentarse a varias reclamaciones sobre una misma obligación o deuda reúna, bajo una sola acción judicial, a los diversos reclamantes para que éstos litiguen entre sí.  Véase Zorniak v. Cessna, 132 D.P.R. 170 (1992).

---

[1] Dicha regla en lo pertinente dispone: "Todas aquellas personas que tuvieren reclamaciones contra el demandante podrán ser unidas como demandadas y requerírseles para que litiguen entre sí dichas reclamaciones, cuando las mismas fueren de tal naturaleza que el demandante estaría o podría estar expuesto a una doble o múltiple responsabilidad." 32 L.P.R.A. Ap.III R-19.

La utilización del mecanismo procesal de "interpleader" fue correcta y acertada en vista de que tanto la Sucesión como la señora Rodríguez García, reclamaron a los compradores tener derecho a recibir el pago correspondiente al producto de la venta del negocio Anselmo García Distributors, Inc. y a los cánones por el arrendamiento del local en donde operaba dicho negocio.  El propósito de la acción de "consignación de rentas y pagos de contrato de arrendamiento" era precisamente que los reclamantes adversos litigaran entre sí a cuál de ellos correspondía la suma adeudada para, entonces, proceder los demandantes al pago de la misma.

Dentro de ese procedimiento de "interpleader", la señora Rodríguez García presentó al Tribunal de Primera Instancia una solicitud de sentencia declaratoria para que el tribunal declarara que ella era copropietaria de Anselmo García Distributors, Inc., por lo que tenía derecho a recibir el 50% de la cantidad adeudada por los compradores y por tanto, dicha suma no era parte del caudal hereditario de García Sorí.

La solicitud de sentencia declaratoria también podía considerarse dentro del procedimiento de consignación o "interpleader" porque precisamente el Tribunal de Instancia, para poder resolver a quién le correspondía el pago en cuestión, tenía que determinar si Rodríguez García era o no copropietaria de Anselmo García Distributors, Inc. El objetivo de la Regla 59 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R-59, el cual regula lo relativo a las sentencias declaratorias, es proveer al ciudadano un mecanismo procesal de carácter remedial mediante el cual se dilucide ante los tribunales los méritos de cualquier reclamación que en forma latente entrañe un peligro potencial en su contra. Charana v. Pueblo, 109 D.P.R. 641, 653 (1980).

Ahora bien, el Tribunal de Primera Instancia, dentro de la acción de consignación y sentencia declaratoria, accedió a la solicitud de Rodríguez García de alimentos a ser sufragados por la Sucesión.  Aunque en un procedimiento de sentencia declaratoria se pueden conceder remedios adicionales al decreto declaratorio,[2] de ordinario, este tipo de solicitud a una Sucesión debe presentarse, en aras de la economía procesal y multiplicidad de pleitos, dentro del procedimiento de división, liquidación y partición de herencia, si el mismo, como en este caso, ya está ante la consideración del tribunal.  Claro está, nada impide que el cónyuge supérstite presente una acción en la que solicite "alimentos" si todavía no se ha instado ante el tribunal una acción de división, liquidación y partición de herencia. En el caso de autos, por ser la acción que tenía ante sí el tribunal de instancia una de consignación y sentencia declaratoria y no una acción partición de herencia, lo que procedía únicamente era declarar los derechos de las partes y si procedía o no la consignación. Sin embargo, tanto el Tribunal de Instancia, como el Tribunal de Circuito

---

[2] Véase Regla 59.4 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R-59.4.

de Apelaciones, pasaron por alto este asunto procesal. Así, dilucidaron y pasaron juicio sobre los méritos y la procedencia de la concesión de alimentos a la señora Rodríguez García. Aunque dicha solicitud de alimentos, por los hechos particulares de este caso, debió hacerse del procedimiento de partición de herencia ya presentado, en aras de la mayor eficiencia y economía procesal, y en vista de que las partes han esbozado extensamente sus argumentos al respecto, consideraremos la controversia en cuestión.

Una vez aclarados dichos aspectos procesales, procede atender las controversias sustantivas que presenta el caso de marras.

IV

**Derecho de alimentos por razón del vínculo conyugal**

En nuestro ordenamiento jurídico el derecho a alimentos que se deriva del vínculo conyugal está regulado por diversas disposiciones legales que atienden supuestos y etapas distintas. Así durante el matrimonio, el deber de alimentación entre cónyuges está reglamentado por los Artículos 88 y 89 del Código Civil, 31 L.P.R.A. sec. 281 y 282. El Artículo 142 del Código Civil, 31 L.P.R.A. sec. 562, el cual regula los alimentos entre parientes, también establece que los cónyuges están obligados recíprocamente a darse alimentos.

Si los cónyuges están en proceso de divorcio, aplicará lo dispuesto en el Artículo 100 del Código Civil, 31 L.P.R.A.sec. 343. Finalmente, la obligación de alimentos entre excónyuges se rige por el Artículo 109 del Código Civil, 31 L.P.R.A. sec. 385.

V

**Derecho de alimentos del cónyuge supérstite**

En caso de fallecimiento de uno de los cónyuges, el derecho a alimentos está regulado por el Artículo 1325 del Código Civil, 31 L.P.R.A. sec. 3700, y por el Artículo 583 del Código de Enjuiciamiento Civil, 32 L.P.R.A. 2443.[3] Estas disposiciones legales, al igual que las anteriormente mencionadas, aplican en instancias y en momentos distintos. Veamos.

El Artículo 1325 del Código Civil, *supra*, dispone:

"De la masa común de bienes se darán alimentos al cónyuge superviviente y a sus hijos mientras se haga la liquidación del caudal inventariado y hasta que se le entregue su haber; pero se les rebajarán de éste en la parte en que excedan de lo que les hubiese correspondido por razón de frutos o rentas."

La doctrina está conteste en que este artículo aplica exclusivamente si existía entre la viuda y el causante una **sociedad legal de gananciales**, pues se interpreta como una consecuencia o efecto de la indivisión postganancial. Manuel Albaladejo, Comentarios

---

[3] De la viuda estar embarazada, aplicaría también lo dispuesto en el Artículo 919 del Código Civil, 31 L.P.R.A. sec. 2716.

al Código Civil y Compilaciones Forales, Tomo XVIII, 1999, págs.657-658.[4] Se entiende que la precitada disposición aplica en aquella etapa, luego del fallecimiento de uno de los cónyuges, en la que todavía no se ha liquidado de la sociedad legal de gananciales. Id. De manera que, el derecho que corresponde a las personas que enumera el Artículo 1325 tiene lugar desde el momento de la disolución del régimen legal de gananciales hasta que la liquidación de éste quede perfeccionada. Albaladejo, *supra*, a la pág. 659. Por tanto, para que aplique el Artículo 1325 del Código Civil deben darse dos condiciones: (1) Que haya existido entre el cónyuge sobreviviente y el causante una sociedad legal de gananciales; y (2) que no se haya liquidado dicha sociedad legal de gananciales.

Ahora bien, nos resta considerar si nuestro ordenamiento jurídico le reconoce al cónyuge supérstite el derecho a alimentos si no se dan una de esas dos condiciones. Es decir, debemos analizar si el cónyuge sobreviviente tiene derecho a alimentos luego del fallecimiento de su cónyuge si el matrimonio no se regía por el régimen legal de gananciales; o aun habiendo existido una sociedad de gananciales, la misma ya fue liquidada. La respuesta a dicha interrogante la provee el Artículo 583 del Código de Enjuiciamiento Civil. Veamos.

VI

### ¿Cuándo aplica el Artículo 583 del Código de

### Enjuiciamiento Civil?

El Artículo 583 del Código de Enjuiciamiento Civil, *supra*, dispone:

"A instancia de parte interesada, el juez podrá mandar, previo aviso, al administrador y demás partes interesadas, que de los productos del caudal se entregue por vía de alimentos a los herederos y legatarios y al cónyuge sobreviviente hasta la cantidad que pueda corresponderles como renta líquida de los bienes a que tengan derecho. El juez fijará la cantidad y los plazos en que el administrador haya de hacer la entrega."

Como se desprende del lenguaje del citado artículo, el mismo aplica en una etapa en la que ya podemos hablar propiamente de "caudal hereditario". La mitad de los bienes que integraban la sociedad legal de gananciales no son parte del caudal hereditario. Esto significa que **la liquidación de la sociedad legal de gananciales debe ser por fuerza un paso previo a la división, liquidación y partición del caudal hereditario.** Verificada aquella liquidación entramos en lo que propiamente debe constituir la masa partible. Véase Méndez v. Ruiz Rivera, 124 D.P.R. 579 (1989). Véanse además, E. González Tejera, Derecho Sucesorio Puertorriqueño, San Juan, Ed. Ramallo, 1983, Vol. I, pág. 368; F. Puig Peña, Compendio de Derecho Civil Español, Sucesiones, 3ra ed. rev., Madrid, Eds. Pirámide, 1976, Vol. VI, págs. 81-82; J. Puig Brutau, Fundamentos de Derecho Civil, 3ra ed., Barcelona,

---

[4] Esta conclusión también encuentra apoyo en el lenguaje mismo del referido artículo, el cual hace referencia al concepto de "masa común". Además, dicha disposición está ubicada en el articulado del Código Civil que regula lo relativo a la liquidación de la sociedad de bienes gananciales.

Ed. Bosch, 1983, T.V, Vol. III, págs. 471 y 502; J.R. Vélez Torres, Derecho de Sucesiones, Madrid, Ed. Sáez, 1974, pág. 330; D. Espín Cánovas, Manual de Derecho Civil Español.

De lo anterior se desprende que al hablar de "caudal hereditario", nos referimos a una masa de bienes de la que ya han sido excluidos aquellos activos o pasivos, que la ley, por diversas razones, considera no son parte del caudal hereditario. Así, ya en esta etapa, la sociedad legal de gananciales, de haber existido, ha sido liquidada. Así también, si el causante tenía bienes en comunidad con otras personas, se ha excluido del caudal lo correspondiente a los comuneros.

Por reconocerse el derecho en cuestión en una etapa en la que ya hay propiamente un "caudal hereditario", resulta lógico que los destinatarios del derecho sean los que de una forma u otra tienen un interés en el caudal, porque son los llamados a heredar. Así pues, los destinatarios del derecho reconocido en el Artículo 583 del Código de Enjuiciamiento Civil son los herederos, los legatarios y el cónyuge sobreviviente. Respecto al cónyuge sobreviviente vale decir que éste siempre tendrá interés en la herencia de su consorte, porque como hemos reconocido reiteradamente el cónyuge viudo es un heredero forzoso, siendo su legítima la cuota viudal usufructuaria. Artículo 736 del Código Civil de Puerto Rico, 31 LPRA sec. 2362; Vda. de Sambolín v. Registrador, 94 D.P.R. 320 (1967); Colón Gutiérrez v. Registrador, 114 D.P.R. 850 (1983). Claro está, el cónyuge viudo podrá tener un interés adicional en el caudal si el causante otorgó un testamento y aquél es llamado como heredero o legatario.

De lo anterior podemos colegir que el viudo o la viuda puede invocar el derecho que reconoce el Artículo 583 del Código de Enjuiciamiento Civil, independientemente de si su matrimonio con el causante se regía por la sociedad legal de gananciales, o se regía por otro tipo de régimen económico establecido en unas capitulaciones matrimoniales. Esto es así porque el derecho que el artículo en cuestión le reconoce al cónyuge viudo es en **virtud de ser legitimario o heredero forzoso. Es acreedor de la cuota viudal usufructuaria**, tanto el cónyuge supérstite cuyo régimen económico matrimonial estuvo regido por capitulaciones matrimoniales, como el cónyuge supérstite sujeto a las disposiciones de la sociedad legal de gananciales. Ab Intestato de Víctor Manuel Salda Candelario, 126 D.P.R. 640 (1990).

Habiendo quedado meridianamente claro cuándo aplica el Artículo 583 del Código de Enjuiciamiento Civil, nos resta considerar la naturaleza y el alcance del derecho allí reconocido.

VII
### Interpretación del Artículo 583 del Código de Enjuiciamiento Civil

Para facilitar la interpretación estatutaria, hemos de analizar por separado cada uno de los conceptos relevantes que contiene el Artículo 583 del Código de Enjuiciamiento

Civil.  A tales efectos resulta útil citar nuevamente la disposición legal que interpretamos:

> "A instancia de parte interesada, el juez podrá mandar, previo aviso, al administrador y demás partes interesadas, que de los **productos** del **caudal** se entregue por vía de **alimentos** a los **herederos y legatarios y al cónyuge sobreviviente hasta la cantidad que pueda corresponderles** como **renta líquida** de los bienes a que tengan derecho. El **juez fijará la cantidad** y los plazos en que el administrador haya de hacer la entrega." Artículo 583 del Código de Enjuiciamiento Civil. 32 L.P.R.A. 2443. (Énfasis Nuestro).

### (a) <u>Naturaleza del Derecho ("Alimentos")</u>

Resulta sumamente importante destacar que aunque el texto legal del Artículo 583 del Código de Enjuiciamiento Civil –así como el del Artículo 1325 del Código Civil– utiliza el concepto "alimentos", la doctrina está conteste en que no se trata en puridad de un "derecho de alimentos", sino que más bien se trata de un derecho a la anticipación o adelanto de lo que en su día podría corresponder al destinatario de este derecho.  Véase Albaladejo, *supra,* a las págs. 657-663; José Luis Lacruz Berdejo, <u>Elementos de Derecho Civil</u>, Tomo IV, 1997, págs. 355-356; Luis Díez Picazo, <u>Sistema de Derecho Civil</u>, Tomo IV, 1984, pág. 281. Véase, además, Sentencia Española de 26 de enero de 1961.

Tan es así, que de determinarse, al hacer la partición hereditaria, que lo concedido al heredero o legatario por vía de "alimentos" excedió la porción del caudal a la que tenía derecho, ese exceso será rebajado de su parte o tendrá que reembolsarlo, según sea el caso.  Así se pone de relieve la diferencia entre el típico derecho de alimentos entre parientes y el derecho de alimentos reconocido tanto en el Art. 583 del Código de Enjuiciamiento Civil, como en el 1325 del Código Civil. Esto pues cuando existe propiamente un derecho de alimentos entre parientes no hay obligación de resarcir, ni reembolsar ni reducir lo que se reciba.  Véase Lacruz, *supra.*

### (b) <u>Procedimiento para solicitar el derecho ("El juez fijará la cantidad y los plazos" correspondientes)</u>

De una lectura somera de la disposición legal en cuestión salta a la vista que para poder invocar el derecho en cuestión el mismo tiene que ser solicitado judicialmente por la parte interesada.  Al juez le corresponderá fijar la cantidad y los plazos correspondientes. Véase Albaladejo, *supra*, a la pág. 662; Manresa, <u>Comentarios al Código Civil</u>, Tomo 9, 1969, pág. 932.

Como adelantamos, este tipo de solicitud, en aras de la economía procesal, puede hacerse dentro de la acción judicial de división y partición de herencia y se tendrá derecho a recibir los pagos hasta que se haga la correspondiente partición hereditaria. Ahora bien, nada impide que se presente una acción judicial independiente a tales efectos si todavía no se ha instado ante el tribunal una acción de partición hereditaria.

### (c) <u>Destinatarios del Derecho ("Herederos, legatarios y cónyuge sobreviviente")</u>

Como señalamos, los destinatarios del derecho reconocido en el Artículo 583 del Código de Enjuiciamiento Civil son los herederos, legatarios y el cónyuge sobreviviente, es decir, aquellos que tienen algún interés sobre el caudal hereditario.

### (d) **Fuente de dónde se obtendrán los fondos ("De los productos del caudal")**

Como se desprende del lenguaje del Artículo 583 del Código de Enjuiciamiento Civil, las sumas en concepto de "alimentos" han de substraerse de los **productos** del caudal, es decir, de los frutos o rentas, si alguno, que genere el caudal antes de la partición hereditaria.  El fundamento de este precepto no puede tener más sentido porque mientras no se hace la partición y hasta que a cada heredero y legatario se le satisfaga su haber, los interesados están privados de su capital y nada más lógico que esos frutos del mismo se destinen durante ese periodo transitorio a los que han de ser propietarios de los bienes.

Como el Art. 583 aplica en un momento en donde todavía no ha habido la división o partición de la herencia, los "alimentos" no pueden substraerse de los bienes que integran el caudal, sino de los frutos que éste genere. Indudablemente el propósito de dicha disposición es el de preservar la integridad del caudal, pues no se trata en esta etapa de repartir bienes del caudal a los que los soliciten como "adelanto", pues esto equivaldría a dilapidar el caudal y lesionar el derecho que los restantes herederos y legatarios puedan tener sobre el caudal.

### (e) **¿Cómo se fija la cuantía? ("Hasta la cantidad que pueda corresponderles como renta líquida de los bienes a que tengan derecho")**

Como son varias personas (herederos, legatarios y cónyuge supérstite) las que pueden invocar ese derecho de adelanto, el que decida invocarlo, claro está, no puede percibir **todos** los frutos que genere el caudal.  Tendrá derecho a recibir una parte de esos frutos.  ¿Qué porción de los frutos tiene derecho a solicitar como adelanto? "Hasta **la cantidad que pueda corresponderles** como **renta líquida**[5] de los bienes a que tengan derecho".

De manera que, el que invoque el derecho de "alimentos" sólo tendría derecho a recibir, a tenor con el Artículo 583 del Código de Enjuiciamiento Civil, una parte de los frutos que genere el caudal.  ¿Qué proporción o parte de esos frutos tiene derecho a que se le conceda? La misma proporción que tendrá derecho en su día a recibir del caudal cuando se proceda a hacer la correspondiente partición.  Nos explicamos.  Por ejemplo, si un heredero tiene derecho en la partición a recibir un tercio del caudal, tendría derecho a

---

[5] El término "renta" se define como "utilidad, producto o beneficio que rinde una cosa". Diccionario Ilustrado de la Lengua Española Gran Sopena, Tomo 3, Editorial Sopena, Barcelona, 1995, pág. 2383. El término "líquido" se define como "el dinero que es el bien de mayor liquidez". Id. a la pág. 1641.

recibir un tercio de los **frutos** del caudal, si es que decide invocar el derecho que le reconoce el Artículo 583.

Recapitulamos todo lo anteriormente explicado. Concluimos que el derecho de "alimentos" reconocido en el Artículo 583 del Código de Enjuiciamiento Civil debe computarse de la siguiente forma: (1) Se determinan los frutos, si alguno, que genera el caudal; (2) Se determina la proporción del caudal a la que oportunamente tendría derecho el legatario o heredero; (3) El que solicite "alimentos" tendrá derecho a recibir de esos frutos que genera el caudal una parte, que como dijimos, es en proporción al derecho que tendría en el caudal; (4) Cuando en su día se hagan las correspondientes operaciones particionales se comparará la cantidad que se otorgó en adelanto con la cantidad que la persona tiene en realidad derecho a recibir. Si lo que se le concedió a tenor con el Artículo 583 del Código de Enjuiciamiento Civil, excede a la cantidad a la que tiene derecho, su parte se verá rebajada o tendrá que devolver el exceso, según sea el caso.

Así pues, el Artículo 583 del Código de Enjuiciamiento Civil le reconoce al cónyuge viudo un derecho a "alimentos" antes de la partición hereditaria. Este derecho constituye más un bien un adelanto o anticipo, que se ha de sustraer de los frutos que genere el caudal, de lo que en su día podría corresponderle al dividirse el mismo.

La forma en que se ha de computar dicho derecho y el alcance del mismo sirve varios propósitos y representa un **balance justo** de los derechos de **todas las personas** con interés sobre el caudal hereditario. Se le reconoce al cónyuge supérstite una protección legal que impide que éste quede desprovisto de recursos económicos (si ese fuera el caso) durante el periodo que precede la división, partición y liquidación del caudal hereditario y a la misma vez, se protegen los derechos de las restantes personas con interés en el caudal.

**No debe pasarse por alto, como señala unánimemente la doctrina española, que a lo que tiene derecho el viudo, no es a "alimentos per se", sino a un adelanto o anticipo que va a ser sustraído de los frutos del caudal hereditario. Reconocer un derecho indiscriminado y absoluto a dichos adelantos sin más, tendría el inescapable e indeseable efecto de dilapidar el caudal y lesionar los derechos que otras personas puedan tener sobre el mismo. No debe perderse de vista que el viudo no es el único que tiene interés en el caudal hereditario indiviso. Así por ejemplo, también lo tienen los acreedores, los legitimarios y los restantes herederos o legatarios.**

VIII

Con este trasfondo doctrinal en mente, nos corresponde examinar los hechos del caso de marras. Veamos.

En el presente caso se alega que la Sra. Rodríguez García y el fallecido García Sorí establecieron el negocio Anselmo García Distributors, Inc. durante su matrimonio y que vendieron el referido negocio y arrendaron el local donde éste operaba. Alega la señora

García Sorí que a pesar de que su matrimonio no se regía por la sociedad legal de gananciales, por haber otorgado capitulaciones matrimoniales, era copropietaria del negocio en cuestión y por tanto, tenía derecho al 50% producto de la venta del negocio y del arrendamiento de un local.

Lo que procede en este caso es en primer lugar, que el Tribunal de Instancia determine si en efecto la señora García era copropietaria de Anselmo García, Inc. De responder en la afirmativa, a Rodríguez García le correspondería por derecho propio un porcentaje de la cantidad adeudada por los compradores del negocio. Obviamente, dicha cantidad no sería parte del caudal hereditario.

La determinación es independiente del análisis del derecho que le reconoce el Artículo 583 del Código de Enjuiciamiento Civil, no ya por derecho propio, sino como legitimaria o heredera forzosa, como acreedora de la cuota viudal usufructuaria.

Respecto al análisis del "derecho de alimentos", el foro de instancia debe, en primer lugar, determinar los frutos que genera el caudal así como la proporción del caudal a la que tendría derecho Rodríguez García. La Sra. Rodríguez García tendrá derecho a recibir de esos frutos que genera el caudal una parte, que como dijimos, es en proporción al derecho que tendría en el caudal. Cuando en su día se hagan las correspondientes operaciones particionales se comparará la cantidad que se otorgó a Rodríguez García con la cantidad que tiene en realidad derecho a recibir. Si lo que se le concedió a tenor con el Artículo 583 del Código de Enjuiciamiento Civil, excede la cantidad a la que tiene derecho, su parte se verá rebajada o tendrá que devolver el exceso, según sea el caso.

Ahora bien, dado que en este caso la Sra. Rodríguez García inicialmente solicitó y el Tribunal de Primera Instancia reconoció la cantidad mensual de dos mil dólares ($2,000.00), procede que este Tribunal asigne dicha suma hasta tanto el tribunal de instancia efectúe el cómputo correspondiente a la luz de los criterios mencionados anteriormente y corrija el cómputo que hizo previamente. Esto, con el propósito de que la Sra. Rodríguez García no se vea privada de alguna fuente de ingresos mientras se determina la cuantía que le corresponde.

Por los fundamentos anteriormente expuestos, estamos conformes con la Sentencia hoy emitida por este Tribunal la cual revoca la determinación del Tribunal de Circuito de Apelaciones y modifica la cuantía otorgada por el foro de instancia. Entendemos, además, que el Tribunal de Primera Instancia debe continuar con los procedimientos de conformidad con los parámetros previamente esbozados.

Federico Hernández Denton
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Anselmo García Dist. Inc.
       Demandantes-Recurridos

          vs.

Sucesión Anselmo García Sori
       Demandados-Peticionarios
------------------------------    CC-1999-234      Certiorari
Rosa Rodríguez García
       Demandante-Recurrida

          vs.

María I. García Peagudo, y Otros
       Demandados-Recurrentes


Opinión Concurrente emitida por el Juez Asociado señor FUSTER BERLINGERI, a la que se une la Jueza Asociada señora NAVEIRA DE RODON.

San Juan, Puerto Rico, a 21 de febrero de 2001.


En esencia, el caso de autos trata de una viuda que reclamó para sí la mitad (50%) del haber de un negocio que su fallecido esposo operaba, más la parte del caudal hereditario del causante que le correspondiese en concepto de cuota viudal usufructuaria. Aunque no existió entre la viuda y su esposo una sociedad de gananciales, la viuda reclamó la mitad del referido negocio como **condueña** de éste, por haber sido establecido conjuntamente entre ella y su esposo, según alegado.

La viuda solicitó, además, que se le asignase la cantidad mensual de $2,000 *pendente lite*, a lo que accedió el foro de instancia. Posteriormente,

sin embargo, dicho foro le otorgó $3,200 mensuales a la viuda, en concepto de "alimentos", en cumplimiento de una orden del Tribunal de Circuito de Apelaciones instruyéndole a determinar la cuantía a la que podría tener derecho la viuda en concepto de alimentos. Los otros herederos del causante han impugnado ante nos la cantidad de $3,200, por considerarla excesiva.

Concurro con el dictamen de la mayoría del Tribunal en cuanto a que en esta etapa de los procedimientos, sólo debió otorgársele a la viuda una mensualidad de $2,000 con cargo a su haber en el caudal en cuestión, **que fue lo que ella solicitó originalmente**. En particular, estimo que los foros *a quo* se excedieron al intentar fijar la cantidad que la viuda podría tener derecho en concepto de "alimentos" **en la etapa preliminar de los procedimientos en que se encuentra este caso**. Es decir, **dichos foros actuaron prematuramente**. Incurrieron así en una pérdida de tiempo y esfuerzos, que ha resultado detrimental para ambas partes en el pleito. Lo que procedía, mas bien, era otorgarle a la viuda la cantidad que reclamó *pendente lite*, por ser ésta razonable; y pasar entonces **sin más dilación** a adjudicar la controversia sobre la titularidad del negocio y, con arreglo a ello, a dividir y liquidar luego el caudal en cuestión. Veamos.


I

En su fondo, el problema que tenemos ante nos se reduce a determinar cómo debe atenderse jurídicamente una situación que ocurre con alguna frecuencia, que ocasiona injusticias al cónyuge supérstite, sobre todo cuando se trata de una viuda[6]. Los hechos del caso de autos ilustran precisamente la situación referida. Aquí tenemos a una viuda de 70 años, que sólo cuenta para su sustento con una pequeña pensión de Seguro Social de $611 mensuales. Esta viuda encara la realidad de tener que vivir con **grave estrechez económica** en su edad avanzada a pesar de que tiene **cuando menos** derecho a una cuota viudal usufructuaria de alegadamente $123,134 de un caudal que asciende al menos a $1,117,206. La grave estrechez económica surge del hecho de que la viuda no tiene control o uso alguno de los bienes del caudal en cuestión y han de transcurrir seguramente muchos meses y hasta años en lo que se dilucida judicialmente y de manera firme y final las complejas cuestiones en controversia, y en lo que se logra finalmente la liquidación de los bienes del caudal referido. En otras palabras, a pesar de la participación cuantiosa a la que la viuda alegadamente tiene derecho en el caudal en cuestión, puede verse en la situación de vivir prácticamente en la **indigencia** por todo el largo tiempo que transcurra en lo que al fin se le entrega lo que le corresponda de dicho caudal.

El problema ante nos en este caso y otros similares, pues, es cómo se protege a la viuda de tener que sufrir de una relativa insolvencia mientras se llevan a cabo unos

---

[6] Véase, <u>Carrero Quiles v. Santiago Feliciano</u>, 133 D.P.R. 727, 735 (1993) y <u>Toppel v. Toppel</u>, 114 D.P.R. 775, 791 (1983).

procedimientos judiciales o notariales que de ordinario toman años en completarse; es decir, qué **adelanto** debe hacérsele a la viuda para su sustento durante el largo tiempo que toma realizar los procedimientos de división y partición de bienes en cuestión.

Como veremos más adelante, nuestro ordenamiento jurídico —específicamente el Art. 1325 del Código Civil de Puerto Rico— reconoce el derecho de "alimentos" del cónyuge supérstite antes de que ocurra la liquidación del caudal en cuestión, pero no dispone **cuánto** concretamente debe adelantársele a dicho cónyuge supérstite ni se precisa **cuándo** debe extendérsele el adelanto.  Son precisamente esos asuntos los que nos conciernen aquí en el caso de autos, sobre todo con miras a evitar la injusticia referida antes de que una viuda quede prácticamente desamparada mientras al fin se liquida el caudal que en parte le pertenece. Específicamente el problema ante nos es el siguiente: qué debe adelantársele a la viuda de su propio haber en el caudal en cuestión, cuando aún no se conoce a ciencia cierta cuánto es el monto preciso de ese haber.

El problema ante nos es esencialmente análogo al que encaramos en <u>Soto López v. Colón</u>, Opinión del 22 de mayo de 1997, 143 D.P.R. ___, 97 JTS 74. Allí se trataba de una ex-cónyuge cuya participación en la sociedad de bienes gananciales que tenía constituida con su marido antes de su divorcio no se había liquidado aún. Los bienes comunes estaban siendo controlados y utilizados exclusivamente por el ex-esposo y nos tocó decidir qué anticipo le correspondía a ella que le permitiese un sostén decoroso mientras se liquidaba la comunidad de bienes existente entre ellos.  Conscientes de la dificultad de poder **estimar** una cantidad precisa a la que tuviese derecho la ex-esposa sin haberse realizado aún las operaciones de inventariar, evaluar y dividir los bienes comunes, resolvimos que ella tenía derecho al pago de la **suma que razonablemente reclamase** para su adecuado sostén, con cargo a lo que eventualmente se determinase como su haber en los bienes comunes. Advertimos, claro está, que si la cantidad reclamada por ella se excedía de lo que por frutos de los bienes comunes le correspondía una vez terminadas todas las operaciones de liquidación, dicho exceso se descontaría de lo que en su día recibiese al efectuarse la división.

La solución que le dimos al problema referido en <u>Soto López v. Colón</u>, <u>supra</u>, surgió de la necesidad de configurar un **remedio práctico** para hacer valer concretamente las normas jurídicas relativas a la **comunidad de bienes**. En particular, era necesario establecer una manera de darle contenido concreto al derecho que a la ex-esposa de ese caso le reconocen los Artículos 327 y 328 del Código Civil de Puerto Rico, 31 L.P.R.A. Secs. 1272-73, de "servirse de las cosas comunes" y de disfrutar de los beneficios de los bienes de la comunidad, **mientras no se ha esclarecido aún cuál es la cuota precisa que le corresponde de tales bienes y de sus frutos**.  En lugar de propiciar que el juez o el notario a cargo del asunto se pusiese a especular o conjeturar cuánto le correspondía a la ex-esposa como adelanto, o sea, cuánto **podría** corresponderle una vez completados los procesos particionales, optamos por conceder lo que la ex-esposa pidiese, si ello era **razonable**.

Nuestro muy deliberado pronunciamiento en ese caso, dirigido a proteger al **socio** de la comunidad de bienes que no está disfrutando aún de los frutos de aquello que le pertenece —usualmente la cónyuge mujer— es aplicable por analogía al caso de autos, no sólo por la evidente similitud que hay entre una situación y otra, sino también porque ya hemos resuelto que como la muerte y el divorcio son causas de la disolución del matrimonio, se les deben reconocer **los mismos efectos**.[7] <u>Vega v. Vega Oliver</u>, 85 D.P.R. 675 (1962). Para un análisis de la similitud y equivalencia de ambas comunidades de bienes post matrimonial, véase Lacruz Berdejo, <u>Derecho de Familia</u>, Bosch, Barcelona, Cuarta Edición, (1997), págs. 353-357.

En el caso de autos, la viuda solicitó un pago de **$2,000** mensuales *pendente lite*. Los foros *a quo* finalmente ordenaron un pago de **$3,200** al mes, bastante más de lo que había solicitado la propia viuda, porque entendieron que esa era la cantidad a la que la peticionaria **podría** tener derecho, ello a pesar de que no se habían dilucidado aún las controversias medulares del pleito. Los foros *a quo* se excedieron en su especulativo dictamen en esta etapa preliminar de los procedimientos. Lo que procedía, al aplicar aquí por analogía lo resuelto en <u>Soto López v. Colón</u>, <u>supra,</u> era que se fijase **de inmediato**, aquí como pago *pendente lite*, la cantidad solicitada por la viuda, **sin necesidad de ulteriores procedimientos sobre ello**, y que se continuara entonces de modo expedito con la consideración y adjudicación de los asuntos en controversia. El pago solicitado sería únicamente un **adelanto** de lo que en su día le correspondería a la viuda **una vez completadas todas las operaciones particionales correspondientes**. Como dicho adelanto sería con cargo al haber de la viuda, y como estaría sujeto a la devolución de cualquier exceso que se le hubiese anticipado, la concesión de lo solicitado, **sin más dilaciones**, hubiese sido lo jurídicamente correcto. Si lo que pide la persona que no tiene control de los bienes comunales —en este caso la viuda—es razonable a la luz del caudal en cuestión, dicho adelanto debe otorgarse de inmediato sin tener que perder tiempo en vistas y otros procedimientos para tratar de especular o anticipar prematuramente cuánto es lo que podría corresponderle a la persona una vez se complete la liquidación del caudal común.

Debe enfatizarse que una vez se concede el **adelanto** referido, solicitado por el cónyuge supérstite que tiene un haber en el caudal en cuestión, **no es necesario** tratar de ajustar esa cantidad más tarde en los procedimientos notariales o judiciales de liquidación pero antes de que éstos hayan concluido. El ajuste correspondiente sólo ha de realizarse

---

[7] Claro está, en el caso de autos, la viuda podría no ser estrictamente una condueña del caudal en cuestión. Precisamente una de las controversias del pleito es si por sus aportaciones la viuda era copropietaria del negocio de su fallecido marido, en vista de que no se constituyó entre ellos una sociedad legal de gananciales. Las disposiciones del Código Civil sobre comunidad de bienes, Artículos 326-340, se refieren primordialmente a los derechos y obligaciones de los condueños o copropietarios de unos bienes comunes. No obstante, la viuda en este caso tiene un indisputable derecho a un usufructo, que por disposición expresa del Art. 765 del Código Civil, 31 L.P.R.A. Sec. 2415, afecta todos los bienes de la herencia. Mientras no se pague la cuota viudal, están afectos todos los bienes de la herencia. Se trata de un derecho real que tiene la viuda, que le

una vez se haya completado la división del caudal, al momento de la liquidación. Pretender hacerlo antes de ese momento apareja incurrir en **conjeturas** precisamente porque no se ha completado aún el proceso de inventariar, evaluar y dividir los bienes del caudal. Tal proceder especulativo es, además, **innecesario** porque si el adelanto razonable pedido por la viuda resultara excesivo al finalizar el proceso referido, el exceso se le descontará de su haber al hacerse la liquidación final.

Aclarado lo anterior, sobre cuánto y cuándo debe hacérsele el adelanto al cónyuge supérstite referido, procede hacer unos señalamientos sobre el origen del derecho del cónyuge supérstite a dicho adelanto. Veamos.

II

De lo señalado antes, es evidente que cuando un cónyuge supérstite tiene algún haber en el caudal que administraba el cónyuge fallecido, su derecho a algún adelanto para su propio sustento en lo que finalmente se liquida el caudal común referido surge **fundamentalmente** de los principios generales relativos a la **comunidad de bienes y derechos**. Véase, Puig Brutau, <u>Fundamentos de Derecho Civil</u>, Tomo III, Vol. II, (1979) págs. 1-57. El Código Civil de Puerto Rico, al igual que el de España, contiene distintas disposiciones para regular las variadas situaciones en las que existe un interés comunitario. Puig Brutau, <u>supra</u>, a la pág. 15. En la situación de autos, que trata sobre la *communitas* del cónyuge supérstite, el Art. 1325 del Código Civil de Puerto Rico, 31 L.P.R.A. Sec. 3700, es la disposición medular que aplica concretamente en este caso. Es dicho artículo la concreción pertinente del derecho que surge de la existencia de una comunidad. Dispone el Art. 1325 referido que "de la masa común de bienes, se darán alimentos al cónyuge sobreviviente y a sus hijos mientras se haga la liquidación del caudal inventariado y hasta que se les entregue su haber; pero se les rebajarán de éste en la parte que excedan de lo que les hubiese correspondido por razón de frutos o rentas."

Con relación al caso de autos, varios aspectos del Art. 1325 referido deben notarse. El primero es que los llamados "alimentos" del cónyuge supérstite pueden reclamarse por éste siempre que exista una "masa común de bienes" entre dicho cónyuge y los hijos del causante. **No importa cuál sea el título particular que cada uno de los comuneros referidos tenga sobre la "masa común de bienes"**. Lo decisivo es que dicha masa exista. La existencia precisamente de una comunidad de bienes es el elemento determinante. Ello surge del tenor literal del Artículo 1325, que se refiere de manera palmaria a aquella situación en que exista una "masa común de bienes" entre el cónyuge supérstite y los hijos del causante, **sin distinguir de modo alguno** entre "la masa común de bienes" que surge cuando hubo una

---

hace comunera en ese sentido del caudal común. Véase, <u>Colón Gutiérrez v. Registrador</u>, 114 D.P.R. 850 (1983).

sociedad legal de gananciales y la que puede existir aunque esa sociedad no se hubiese formado.

Es evidente que la "masa común de bienes" referida **surge de ordinario** cuando entre el causante y el cónyuge supérstite hubo una sociedad de gananciales. No cabe dudas de que se estaba pensando en la sociedad de gananciales cuando se formuló originalmente dicho artículo hace cientos de años. Pero este dato, en buena técnica de interpretación judicial, no es suficiente para llegar a la conclusión de que el artículo referido hoy día aplica únicamente a la situación original aludida, sobre todo en vista de la histórica insuficiencia del Código Civil con respecto a regular concretamente **todas** las situaciones en las que existe un interés comunitario. Puig Brutau, supra, págs. 14-15. La restricción de aplicar el Art. 1325 sólo a situaciones en que hubo una sociedad de gananciales no surge del lenguaje de dicho artículo, y éste no debe interpretarse de tal modo limitante, no sólo porque ello no responde a ningún interés social legítimo, sino, además, porque tal interpretación restrictiva se daría al margen de la realidad social contemporánea. Esa realidad tiene dos aspectos pertinentes a lo que aquí nos concierne. Primero, que hoy día el cónyuge sobreviviente siempre tiene una participación en el caudal del causante porque ahora existe como legítima la cuota viudal usufructuaria, que no existía antes. Vda. de Sambolín v. Registrador, 94 D.P.R. 320 (1967). Haya habido una sociedad de gananciales entre el cónyuge supérstite y el causante o no, entre dicho cónyuge y los hijos del causante existe una "masa común de bienes" porque el cónyuge viudo es también un heredero forzoso. Ello no era así cuando se formuló originalmente el Art. 1325, que es una copia del antiguo Art. 1430 del Código Civil Español.

El otro aspecto de la realidad contemporánea es el hecho de que cada vez es más frecuente que existan matrimonios sin que se establezca una sociedad de bienes gananciales entre los cónyuges. Hoy día ha aumentado el uso de las capitulaciones matrimoniales, mediante las cuales los cónyuges pueden establecer regímenes de bienes comunes distintos a los de la sociedad de gananciales, como el que alegadamente existía en el caso de autos, dando así lugar a otro tipo de "masa común de bienes". Debe recordarse que la existencia de capitulaciones matrimoniales entre cónyuges **no puede precluir la adjudicación de la cuota viudal usufructuaria al fallecimiento de uno de los consortes**. AB Intestato Saldaña Candelario, 126 D.P.R. 640 (1990).

Dicho de otra forma, el lenguaje amplio y sencillo del artículo en cuestión claramente permite en la actualidad una interpretación de éste que recoja los nuevos intereses sociales de nuestra época. El Código Civil nuestro ha prevalecido por tanto tiempo precisamente porque mediante nuestra interpretación de su dilatado lenguaje le hemos impartido actualidad a sus principios generales. No tiene sentido jurídico insistir en las reliquias del pasado cuando enfrentamos cambios sociales que requieren nuestra atención.

En particular debe notarse que, según surge del propio Art. 1325, los "alimentos" del cónyuge supérstite en cuestión no son propiamente tal cosa. Son realmente un **anticipo** o adelanto que se le hace al cónyuge supérstite a cuenta de su propio haber, bien sea de los frutos de su participación en el caudal común, bien sea del propio capital a dividir. Joaquín J. Ramos Albesa, La Sociedad de Gananciales, TECNOS, S.A., Madrid (1992) pág. 421; Janer Vilá v. Tribunal Superior, 90 D.P.R. 281 (1964). Por ende, como dichos "alimentos" del Art. 1325 referido son sólo un anticipo de lo que le pertenece al propio cónyuge supérstite, un anticipo de su haber en el caudal común, poco debe importar si dicho haber surgió por razón de una sociedad de gananciales, si surgió por razón de la cuota viudal, o si surgió por razón de otra sociedad que el cónyuge supérstite tuvo con el causante.  Si en un caso hay derecho al anticipo de lo propio mientras continúa la **indivisión** del caudal común, ¿por qué no ha de haberlo también en las otras situaciones similares que afectan al cónyuge supérstite que forma parte de una comunidad de bienes?

Debe enfatizarse que el referido Art. 1325 del Código Civil es la fuente concreta del anticipo al cónyuge supérstite que aquí nos interesa. **Dicho anticipo no surge en casos como el de autos del artículo 583 del Código de Enjuiciamiento Civil, 32 L.P.R.A. 2443**. Ello es así, en primer lugar, por razón del postulado fundamental con arreglo al cual las normas **procesales** no crean o establecen derechos sustantivos. El artículo 583 del Código de Enjuiciamiento Civil de Puerto Rico, que procede del artículo 1100 de la Ley de Enjuiciamiento Civil Española, es obviamente una norma de carácter procesal, puro elemento formal, que no tiene la función de conceder o derrotar derechos sustantivos. Las normas procesales no tienen vida propia y sólo existen para hacer viable la consecución de algún derecho sustantivo que ya tenían las personas. Núñez González v. Jiménez Miranda, 122 D.P.R. 134 (1988); Moa v. E.L.A., 100 D.P.R. 573 (1972). Es difícil concebir, pues, cómo es que el cónyuge supérstite pueda tener algún derecho de alimento que le provea el Art. 583 referido, que no haya sido establecido antes por alguna otra disposición sustantiva del ordenamiento jurídico.

En segundo lugar, y quizás más importante aún, el Art. 583 referido es parte de un conjunto integral de normas procesales, que no puede ser interpretado aisladamente, como si fuera una norma autónoma. En efecto, dicho artículo es sólo una parte del esquema normativo que regula aquella **administración judicial** del caudal hereditario que se pone en vigor a instancia de partes interesadas. Vélez Torres, Derecho de Sucesiones, Tomo IV, Vol. III (1992) pág. 491;  González Tejera, Derecho de Sucesiones, Parte I, (1983), pág. 195. Como se sabe, tal administración judicial de la herencia sólo procede en algunos casos; y en éstos, es principalmente potestativa de las partes interesadas. Ibid. Por ello, es difícil entender cómo es que el Art. 583 puede ser fuente de algún derecho ordinario de alimentos del cónyuge supérstite cuando dicho artículo no es aplicable generalmente a todos los casos de herencia en los cuales hay cónyuges supérstites; y cuando su vigencia aun en

los casos en que podría ser aplicable, es potestativa sólo de las partes interesadas. No puede ser fuente de un derecho sustantivo de alimentos una disposición que sólo existe para regir en sí cómo han de conducirse los procedimientos para la administración judicial de un caudal, en aquellos únicos casos en que las partes interesan tal administración y tienen facultad para pedirla.  Si el Art. 583 referido fuese la fuente del derecho de "alimentos" referido, entonces dichos "alimentos" no procederían en ningún caso en el cual no se haya solicitado la administración judicial del caudal común. Sería, pues, una fuente trunca del derecho referido que, como se señala más adelante, existe y puede hacerse valer aunque no exista la administración judicial del caudal.

Finalmente, debe señalarse que no hay razón para suponer que existe una escisión entre el Art. 1325 del Código Civil y el Art. 583 del Código de Enjuiciamiento Civil. **Los artículos referidos no disponen efectos o consecuencias jurídicas diferentes**. Ambos claramente perpetúan la noción esencial de que los "alimentos" del cónyuge supérstite no deben exceder de lo que le corresponda como renta o frutos de su haber en el caudal común. Más importante aún, aunque la redacción es más clara en un artículo que en el otro, ambos aluden al fundamental principio reconocido reiteradamente en la doctrina civilista que mientras se liquida el caudal común, lo que se dará al cónyuge supérstite es un **anticipo estimado** de lo que **pueda corresponderle** cuando ocurra finalmente la liquidación. Como en lo esencial, según interpretado por los comentaristas, no hay diferencias de fondo entre las dos disposiciones referidas, no hay ninguna escisión entre ellos. No cabe una distinción donde no hay diferendos.

En resumen, pues, a la altura de nuestros tiempos la interpretación más útil y de mayor sentido jurídico del Art. 1325 del Código Civil es la que reconoce que ese artículo es la concreción pertinente del derecho que dimana de la existencia de una comunidad de bienes particulares y que provee la autorización específica para el pago de "alimentos" a cualquier cónyuge supérstite que tenga participación en la "masa común de bienes" que aún no se ha dividido, irrespectivo de la causa particular de tal participación en el referido caudal común. En el Derecho Civil sólo hay una fuente para el anticipo al cónyuge supérstite procedente de su haber en su caudal común, que la concretiza el Art. 1325 del Código Civil. Véase, Lacruz Berdejo, supra. Este anticipo puede hacerse valer mediante lo dispuesto en el Art. 583 del Código de Enjuiciamiento Civil, a instancia de parte interesada, en aquellos casos en los cuales se ha procurado la administración judicial de la herencia. Si no hay tal administración judicial, el anticipo referido se puede hacer valer mediante otras disposiciones del Código de Enjuiciamiento Civil que son aplicables.  González Tejera, supra, págs. 181-194.

III

Un segundo aspecto que debe notarse de lo que dispone el Art. 1325 referido es que la solicitud de "alimentos" que pueda hacer un cónyuge supérstite antes de que finalmente se liquide el caudal común, **no tiene que presentarse necesariamente dentro de un procedimiento judicial de división, liquidación y partición de herencia**. Ello es así porque en la práctica en un gran número de casos, el proceso de inventariar, dividir y liquidar un caudal luego de la muerte de un causante ocurre **extrajudicialmente**. Guaroa Velázquez, Teoría del Derecho Sucesorio Puertorriqueño, pág. 83-86. Así pues, en determinadas situaciones, el cónyuge supérstite puede solicitar los "alimentos" en cuestión al albacea que está a cargo de la tarea referida, sin que haya un pleito entre dicho cónyuge y las otras partes interesadas en el caudal. González Tejera, Vol. II, supra, a la pág. 492. También podría el cónyuge supérstite formular tal petición extrajudicial directamente a los herederos del causante, con quienes dicho cónyuge tiene una comunidad de bienes. Art. 332 del Código Civil, 31 L.P.R.A. Sec. 1277; Irizarry v. Registrador, 22 D.P.R. 94 (1915). Incluso puede ocurrir que el cónyuge supérstite quiera continuar con la división de los bienes extrajudicialmente, por ser lo más expedito, y que la única controversia que tenga con las otras personas que tienen reclamos sobre el caudal sea precisamente sobre el anticipo que desea recibir de los frutos del caudal. En tal caso, no tendría sentido jurídico requerirle que inste una acción judicial de partición, que no interesa, como condición para que pueda solicitar los "alimentos" referidos. En otras palabras, el cónyuge supérstite debe poder reclamar judicialmente su anticipo o "alimentos" aunque no haya solicitado la liquidación de los bienes comunes, tal como lo reconocimos en una situación esencialmente igual en Soto López v. Colón, supra. En efecto, el llamado derecho de "alimentos" que aquí nos concierne, el derecho a un adelanto, no es propiamente sólo un remedio *pendente lite*, que únicamente procede si hay un pleito pendiente. Más bien, es un remedio a que tiene derecho el cónyuge supérstite mientras esté **pendiente de liquidación** la masa común de bienes. Por ello no es correcto suponer que dicho derecho sólo puede ser reclamado dentro de una acción judicial de partición.

Por otro lado, la solicitud de "alimentos" referida **puede presentarse en cualquier etapa procesal de la liquidación del caudal y no meramente cuando la sociedad legal de gananciales, de haber existido, ya ha sido liquidada**. Debe tenerse en cuenta que la liquidación de los bienes gananciales, si bien es una operación distinta de la de partición de herencia, **pueden ocurrir ambas conjuntamente en un mismo procedimiento judicial o notarial**. No cabe duda que no existe propiamente un "caudal hereditario" hasta que no se ha liquidado la sociedad de gananciales, si ésta existió. Pero este hecho no significa que las operaciones de liquidación de la sociedad de gananciales y de partición de la herencia se realicen siempre como dos procesos separados e independientes. Con frecuencia ocurren conjuntamente, tanto judicial como extrajudicialmente, por lo que no se debe requerir que

la solicitud de "alimentos" del cónyuge supérstite sólo pueda presentarse judicialmente dentro de la etapa de partición de herencia.

En resumen, pues, por las razones expuestas, sería muy limitativo sujetar el derecho a "alimentos" del cónyuge supérstite a la acción judicial de división y partición de la herencia. El resultado de ello sería que la viuda pueda quedarse desprovista de lo que le pertenece por demasiado tiempo, sin que exista alguna razón jurídica de peso que lo justifique.

JAIME B. FUSTER BERLINGERI<br>
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Anselmo García Distributors
    Demandantes-Recurridos

                    v.

Sucn. Anselmo García Sorí
    Demandados-Peticionarios            CC-1999-234      Certiorari
_____
Rosa Rodríguez García
    Demandante-Recurrida

                    v.

María Isabel García Peagudo
    Demandada-Recurrente

Opinión disidente emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 21 de febrero de 2001.

La Opinión de Conformidad emitida por el Juez Asociado señor Hernández Denton parte de la premisa que el Art. 1325 del Código Civil de Puerto Rico[8] no es aplicable a una reclamación de alimentos por parte de un cónyuge superviviente, cuando éste contrajo matrimonio otorgando previamente capitulaciones matrimoniales estableciendo un régimen de separación de bienes, aun cuando se alega que existía entre los cónyuges una comunidad sobre ciertos bienes.    Por    cuanto,    entendemos    que    el    Art.

_____

[8] 31 L.P.R.A. sec. 3700.

1325 del Código Civil de Puerto Rico, _supra_, aplica a las circunstancias particulares de este caso, y a la etapa en la que se encuentra la controversia presentada ante nos, disentimos de la sentencia dictada por este Tribunal. Tampoco podemos estar de acuerdo con la Opinión de Conformidad del Juez Asociado señor Hernández Denton.

I

Como parte de un procedimiento de demanda de consignación de rentas y pagos por concepto de contrato de arrendamiento, la señora Rosa Rodríguez García presentó ante el Tribunal de Primera Instancia una solicitud de sentencia declaratoria, para que se le declare copropietaria del producto de la venta del negocio que durante su matrimonio[9] con el señor Anselmo García Sorí, éste estableció. Además, solicitó que se determinara que su participación no debía considerarse parte del caudal hereditario.[10]

Luego de varios trámites procesales, el Tribunal de Primera Instancia asignó a la señora Rodríguez García una partida de tres mil doscientos dólares ($3,200) mensuales, por concepto de alimentos _pendente lite_. Inconforme con esa determinación, la sucesión de Anselmo García Sorí presentó un recurso de _certiorari_ ante el Tribunal de Circuito de Apelaciones, el cual fue denegado. No estando conforme con tal decisión, la Sucesión de Anselmo García Sorí, acude ante nos.

La sentencia emitida resuelve devolver el caso al Tribunal de Primera Instancia. La Opinión de Conformidad emitida por el Juez Asociado señor Hernández Denton sugiere que los "alimentos" deberán ser concedidos por el Tribunal de Primera Instancia aplicando el Art. 583 del Código de Enjuiciamiento Civil.[11]

El análisis jurídico contenido en la referida Opinión de Conformidad, con relación al Art. 583 del Código de Enjuiciamiento Civil, _supra_, somos de la opinión que no aplica a las circunstancias particulares de este caso y a la etapa en la que se encuentra la controversia de autos.

II

Para poder llevar a cabo un análisis jurídico de este asunto, es menester definir la controversia ante nuestra consideración. Ésta surge en un momento intermedio entre la

---

[9] La señora Rodríguez García y el señor Anselmo García Sorí, antes de la celebración de su matrimonio, otorgaron capitulaciones matrimoniales, en virtud de las cuales pactaron la separación de bienes y rechazaron expresamente el régime
n de sociedad legal de gananciales. Véase Apéndice I, pág. 187, de la Solicitud de _Certiorari_.

[10] En los referidos contratos de compraventa de negocio en marcha, así como en el contrato de compraventa de acciones corporativas, se identifica a don Anselmo García Sorí y a doña Rosa Rodríguez García como los vendedores y dueños en pleno dominio del negocio en marcha y del cien por ciento (100%) de las acciones comunes de Anselmo García Distributors, Inc. Véase Apéndice I, págs. 73-77, de la Solicitud de _Certiorari_. La validez de estos contratos ha sido impugnada por la sucesión de Anselmo García.

[11] 32 L.P.R.A. sec. 2443.

disolución del matrimonio, por muerte de uno de los cónyuges, y la definitiva liquidación del caudal. Durante este período intermedio, la señora Rodríguez García presenta una reclamación alegando que ciertos bienes le pertenecen por derecho propio y no forman parte del caudal hereditario. Además, reclamó una cantidad por alimentos pendente lite mientras se dilucidaba la anterior controversia.

Es evidente, que la señora Rodríguez García tiene derecho a recibir alimentos[12] durante este período. Este derecho está reconocido en nuestro ordenamiento en el Art. 1325 del Código Civil, supra,[13] y en el Art. 583 del Código de Enjuiciamiento Civil, supra.[14] Cada una de estas disposiciones legales aplican en situaciones particulares y circunstancias distintas.

El Art. 583 del Código de Enjuiciamiento Civil, supra, aplica en una etapa en la que el "caudal hereditario" se encuentra claramente definido. Es decir, se excluye todo aquello que por diversas razones no se considera parte del caudal mismo, como son los bienes que se tienen en comunidad con otras personas. Mientras existan en el caudal bienes pertenecientes a otros comuneros o copropietarios, no puede aplicar el Art. 583 del Código de Enjuiciamiento Civil, supra. Por lo tanto, ante la posición fundamentada y razonable de la señora Rodríguez García, sobre la existencia de un estado de comunidad de bienes, que se traduce a un caudal hereditario no definido, el derecho a recibir alimentos por el cónyuge superviviente no emana de dicho estatuto.

El derecho a recibir alimentos pendente lite, bajo las circunstancias particulares de este caso, emana del Art. 1325 del Código Civil, supra.[15] Dicho artículo dispone que con cargo a esa masa común se dan alimentos al cónyuge superviviente y a sus hijos, mientras

---

[12] Los alegados "alimentos" solicitados no son en puridad un derecho de alimentos, sino que más bien se trata de un derecho a la anticipación o adelanto de lo que en su día podría corresponder al destinatario de ese derecho. Por tanto, cuando hacemos referencia en esta Opinión a los alimentos, nos referimos específicamente a ese concepto.

[13] El Art. 1325 del Código Civil, supra, dispone:

De la masa común de bienes se darán alimentos al cónyuge superviviente y a sus hijos mientras se haga la liquidación del caudal inventariado y hasta que se le entregue su haber; pero se les rebajarán de éste en la parte que excedan de lo que les hubiese correspondido por razón de frutos o rentas.

[14] Dispone el Art. 583 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2443 lo siguiente:

A instancia de parte interesada, el juez podrá mandar, previo aviso al administrador y demás partes interesadas, que de los productos del caudal se entregue por vía de alimentos a los herederos y legatarios y al cónyuge sobreviviente hasta la cantidad que respectivamente pueda corresponderles como renta líquida de los bienes a que tengan derecho. El juez fijará la cantidad y los plazos en que el administrador haya de hacer la entrega.

no se efectúe la división de la masa consorcial (liquidación del caudal y pago del haber).[16]
Esa masa común, a la cual hace referencia el Código Civil, no se refiere exclusivamente
a la comunidad de bienes ordinaria que surge cuando se disuelve el matrimonio y con éste
el régimen de sociedad legal de gananciales que rige, sino también a cualquier otro régimen
de copropiedad que pueda surgir aun cuando los cónyuges han otorgado capitulaciones
matrimoniales.  En la masa común están comprendidos los capitales particulares del cónyuge
superviviente y del premuerto o sus hijos, y los comunes, si los hubiere.[17]  De haber existido
una sociedad legal de gananciales como régimen patrimonial, la nueva comunidad que surge
al disolverse no se rige por las normas de la sociedad de gananciales que hasta entonces
se aplicaba a los bienes de los cónyuges.[18]  Disuelta la sociedad, sus titulares son
partícipes de una comunidad ordinaria; aunque el estado de indivisión se prolongue, se
tratará en todo caso de una masa en liquidación.[19]  La comunidad de bienes que así surge,
se rige por las normas referentes a la copropiedad.[20]

Por otra parte, este concepto de masa común no es ajeno al caso de los cónyuges que
han otorgado capitulaciones matrimoniales y descartan el régimen de la sociedad legal de
gananciales, pero que dentro de su matrimonio surge una comunidad de bienes.  La
jurisprudencia ha reconocido la existencia de una comunidad de bienes entre dos personas
casadas por capitulaciones matrimoniales, que han descartado la sociedad legal de
gananciales como su régimen patrimonial.[21]  Inclusive, se ha reconocido en el caso de
concubinos un interés propietario y participación con respecto a los bienes adquiridos
durante la vigencia de su relación.[22]  Por lo tanto, el concepto masa común a que hace

---

[15] La sentencia emitida por este Tribunal y la Opinión de Conformidad del Juez Asociado señor Hernández Denton descartan la aplicación del Art. 1325 del Código Civil, supra, a las circunstancias particulares del caso de autos.

[16] Luis Díez Picazo y Gullón, Sistema de Derecho Civil, 7ma ed., Madrid, Tecnos, 1997, Vol. IV, pág. 217.

[17] J.L. de los Mozos, Comentarios al Código Civil y Compilaciones Forales, 2da ed., Madrid, Ed. Revista de Derecho Privado, 1999, T. XVIII, Vol. 2, págs. 657-658, esc. 7.

[18] IV José Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1967, Vol. I,  pág. 784.

[19] Íd.

[20] Art. 326 del Código Civil, 31 L.P.R.A. sec. 1271.  Calvo Mangas v. Aragonés Jiménez, 115 D.P.R. 219, 228 (1984).

[21] La diferencia principal estriba en que bajo un régimen de capitulaciones deberá probarse que uno de los cónyuges trabajó, brindó servicios y se esforzó durante el matrimonio para acrecentar el capital privativo de otro.  Véase Domínguez Maldonado v. E.L.A., 137 D.P.R. 954, 968-969 (1995) (J. Naveira de Rodón).

referencia el Art. 1325 del Código Civil, supra, no puede ser uno exclusivo que sólo emana como consecuencia del régimen de la sociedad legal de gananciales. Este artículo, que procede del Art. 1408 del Código Civil Español, carece de tradicional raigambre en los precedentes del régimen de la comunidad procedente de una sociedad legal de gananciales.[23] El derecho que reconoce dicho estatuto es una consecuencia, o, si se prefiere, una supervivencia de un régimen económico matrimonial.[24]

El matrimonio como tal, produce necesariamente una asociación de los cónyuges, tanto en el ámbito personal como patrimonial. La vida común engendra necesariamente una cierta confusión de intereses: los bienes resultan mezclados, se adquieren nuevos elementos patrimoniales y se realizan gastos en interés del hogar. Aun en el caso de que los esposos hayan decidido establecer entre ellos una separación de bienes, podría tenerse que resolver cuestiones de prueba sobre propiedad o de contribución a las cargas del matrimonio, en el caso de su disolución. Será el régimen más o menos complejo, pero se impone siempre como una inevitable necesidad.[25]

El Art. 1325 del Código Civil, supra, tiene como fin, que tanto el cónyuge superviviente y sus hijos reciban un adelanto de lo que le pertenece al primero, deducible sobre su haber.

La referida Opinión de Conformidad tiende a limitar los derechos que tienen el cónyuge superviviente y los hijos de matrimonio, cuando existe otro régimen diferente a la sociedad legal de gananciales, y entendemos que equivale, muy respetuosamente, a un retroceso en la evolución del derecho puertorriqueño. La institución del matrimonio es piedra angular de nuestra sociedad. Sin embargo, no necesariamente tiene el mismo rango un régimen patrimonial en particular, que pueda surgir por razón o como consecuencia del mismo o de la unión de un hombre y una mujer en forma consensual.

La jurisprudencia ha reconocido una comunidad de bienes en los casos en que se demuestra que uno de los cónyuges aporta trabajo, beneficio y esfuerzo durante la relación conyugal. Esta aportación forma parte de la masa común de la cual se dará alimentos a los copartícipes en la indivisión, en particular al cónyuge superviviente. En el caso ante nuestra consideración, la señora Rodríguez García alega, con razonable fundamento, no meramente que aportó trabajo y esfuerzo, sino que estuvo envuelta en el quehacer económico de su cónyuge fallecido, como propietaria y accionista.

---

[22] Domínguez v. E.L.A., supra, pág. 641; Ortíz de Jesús v. Vázquez, 119 D.P.R. 547 (1987).

[23] J.L. de los Mozos, op. cit., págs. 657-658.

[24] J.L. de los Mozos, op. cit., pág. 661. El régimen patrimonial del matrimonio es un conjunto de reglas que delimitan los intereses pecuniarios que se derivan del matrimonio. Recibe sus reglas, según los casos, de la voluntad de los esposos o puramente de la ley, pero siempre está vinculado a la institución del matrimonio, constituyendo uno accesorio de ella. Castán Tobeñas, Derecho Civil español, común y foral, 12ma ed., Madrid, Ed. Reus, 1994, T. V, Vol. I, pág. 304.
[25] Domínguez Maldonado v. E.L.A., supra, pág. 969.

Esas normas jurisprudenciales fueron formuladas con el propósito de facilitar a la mujer la oportunidad de luchar por posiciones de igualdad y respeto en diversas áreas, principalmente la económica.  La ley ha de ser interpretada atribuyéndole el sentido que mejor responda a la realización de los resultados que a través de ella se quiera obtener y siempre en la búsqueda de un fin socialmente útil.[26]

Por los fundamentos antes expuestos, no compartimos la óptica de la Opinión de Conformidad antes indicada sobre la aplicación del Art. 583 del Código de Enjuiciamiento Civil de Puerto Rico, supra, a las circunstancias particulares de este caso, y a la etapa de los procedimientos de autos.  Disentimos de la modificación realizada por este Tribunal a la cantidad asignada por el Tribunal de Primera Instancia en concepto de "alimentos" pendente lite a la señora Rodríguez García.  Expediríamos el auto solicitado y revocaríamos la resolución del Tribunal de Circuito de Apelaciones.  Confirmaríamos al Tribunal de Primera Instancia ordenándole la continuación de los procedimientos con la aplicación del Art. 1325 del Código Civil, supra, a la determinación ya realizada por ese Tribunal sobre los "alimentos" pendente lite, por los efectos posteriores que ha de tener sobre los asuntos pendientes de resolver ante ese foro.


EFRAÍN E. RIVERA PÉREZ
Juez Asociado

---

[26] Cf. Morales Torres v. Tribunal Superior, 99 D.P.R. 459 (1970); Mills Factor Corp. v. Registrador, 97 D.P.R. 379, 383 (1969).