Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| CARLOS BÁEZ FIGUEROA  Recurrente  v.  DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN  Agencia Recurrida | KLRA202500356 | Revisión procedente del Departamento de Corrección y Rehabilitación  Caso núm.: B7-13373  Sobre: No Concesión de Pases Familiares |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores

Sánchez Ramos, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de agosto de 2025.

El Departamento de Corrección y Rehabilitación ("Corrección") denegó una solicitud de pases familiares. Según se explica en detalle a continuación, procede la confirmación de la decisión recurrida, pues, bajo la reglamentación aplicable, la parte recurrente actualmente no es elegible para participar del referido programa.

I.

Desde el 20 de noviembre de 1996, el Sr. Carlos Báez Figueroa (el "Recurrente") extingue una condena de noventa y nueve (99) años de prisión, por los delitos de asesinato, robo, robo (tentativa) e infracción a los Artículos 6 y 8 de la Ley de Armas entonces vigente.[1] Actualmente, el Recurrente se encuentra clasificado en custodia mediana.

Por otra parte, a partir del 6 de febrero de **2019**, en la jurisdicción federal, el Recurrente extingue una condena de más de **18 años** (210 meses) de reclusión, tras declararse culpable de

---

[1] Además, el Recurrente cuenta con un récord criminal anterior a la fecha en que comenzó a extinguir la condena de 99 años.

cometer, estando en prisión, una infracción al "Racketeer Influenced and Corrupt Organizations Act" ("RICO"), 18 USC secs. 1961-1968.

El 20 de diciembre de 2024, el Recurrente solicitó pases familiares sin supervisión ante el Comité de Clasificación y Tratamiento (el "Comité").

Culminada la investigación de rigor, el 19 de mayo de 2025, el Comité emitió un *Acuerdo* mediante el cual denegó la solicitud del Recurrente. Según consta en el aludido *Acuerdo*, la razón para denegar el pase familiar fue que, durante la investigación del Programa de Comunidad, se recibió una confidencia a los efectos de que la seguridad del Recurrente podía estar en riesgo.

En desacuerdo, el 13 de junio, por derecho propio, el Recurrente interpuso el recurso de referencia; formula los siguientes dos (2) señalamientos de error:

> Erró el DCR al denegar la concesión de pases familiares al confinado sin el debido proceso de corroboración y verificación de la alegada confidencia recibida.

> Erró el DCR al brindarle mayor peso a la alegada confidencia por encima de todos los elementos positivos que recomiendan o respaldan la concesión del privilegio al amparo del debido proceso de ley en los casos administrativos que requieren que una determinación sea basada en evidencia y preponderancia de la prueba.

El 23 de junio, le solicitamos a Corrección consignar su postura en cuanto al recurso. El 14 de julio, Corrección, por conducto de la Oficina del Procurador General, presentó su alegato. Arguyó que, bajo la reglamentación pertinente, el Recurrente no es elegible para disfrutar de los pases pretendidos, pues tiene vigente un "detainer", a raíz de que "cumple una sentencia federal concurrentemente con la estatal". También planteó que, a la luz del carácter de los delitos por los cuales cumple sentencia, y de la opinión de "las partes afectadas por la actividad delictiva del recurrente", se justificaba también la decisión recurrida. El Recurrente replicó; arguyó que la reglamentación solo excluye de

disfrutar pases familiares a quien todavía deba cumplir físicamente en prisión federal parte de una condena.  Resolvemos.

II.

El Artículo 4.002 de la Ley Núm. 201 de 22 de agosto de 2003, Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (la Ley 201-2003), 4 LPRA sec. 24u, dispone que el Tribunal de Apelaciones tendrá jurisdicción para revisar "como cuestión de derecho [...] las decisiones finales de los organismos y agencias administrativas".  De igual modo, el Artículo 4.006 de la Ley 201-2003, 4 LPRA sec. 24y, establece la revisión judicial "de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas".

Por su parte, en lo atinente al alcance de la revisión judicial de las determinaciones de las agencias administrativas, la Sección 4.5 de la Ley Núm. 38-2017 ("LPAU"), 3 LPRA sec. 9375, establece lo siguiente:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.

La evidencia sustancial se define como la "prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127-128 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018), *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953).  A su vez, se desprende de la sección precitada que el expediente administrativo constituye la base exclusiva para la decisión de la agencia en un procedimiento adjudicativo, así como para la subsiguiente revisión judicial.  Véase,

además, Sección 3.18 de la LPAU, 3 LPRA sec. 9658; *Graciani Rodríguez*, 202 DPR a la pág. 128.

III.

El Artículo 2 del Plan de Reorganización Núm. 2 del 21 de noviembre de 2011, según enmendado, conocido como el Plan de Reorganización del Departamento de Corrección y Rehabilitación (el "Plan de Reorganización"), decretó como política pública:

> [L]a creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad. 3 LPRA Ap. XVIII, Art. 2.

Además, el Plan de Reorganización le concedió a Corrección la facultad de "[a]doptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios". Artículo 7(aa) del Plan de Reorganización, 3 LPRA Ap. XVIII, Art. 7(aa).

En lo atinente a la controversia que atendemos, los programas de desvío son aquellos que permiten que las personas que cumplen una condena penal cumplan parte de su sentencia fuera de la institución correccional. 3 LPRA, Ap. XVIII, Art. 3(v). Estos pases son el objeto del Reglamento Núm. 9499 del 19 de septiembre de 2023, conocido como *Reglamento para la Concesión de Permisos a los Miembros de la Población Correccional para Salir de las Instituciones Correccionales del Gobierno de Puerto Rico* (el "Reglamento"). El Reglamento establece el "procedimiento para la

evaluación y concesión de permisos a los miembros de la población correccional para salir de las instituciones correccionales, en todo caso que se determine que dicha concesión constituye una medida de tratamiento conveniente y necesaria para su rehabilitación mediante su readaptación progresiva de la comunidad". Art. II del Reglamento 9499.

Ahora bien, el Artículo VIII(9) del Reglamento expresamente dispone que "no cualificarán para los pases" quienes tengan vigentes "warrants" o "detainers". En efecto, la referida disposición, al establecer los requisitos, condiciones y exclusiones para la concesión de estos permisos, estipula taxativamente que:

> 9. Las sentencias mixtas (al culminar sentencia de prisión salen a cumplir tiempo en probatoria), casos que deban tiempo por cumplir físicamente en prisión federal y **casos que tengan vigentes "Warrants" o "Detainers" no cualificarán para los pases** estipulados en este Reglamento. (Énfasis provisto).

Por otro lado, resaltamos que el inciso (6) del Artículo VI, Reglas de Aplicación General, del Reglamento, establece expresamente que, además del historial delictivo, la naturaleza o circunstancias de los delitos, el término de la sentencia, el comportamiento del confinado, las evaluaciones y los tratamientos que ha tomado, se consideran también "la experiencia en permisos anteriores, la opinión de las víctimas, los testigos del delito o relacionados con el acto delictivo, la opinión de las vecinos de la comunidad a visitarse e información sabre otras situaciones que hayan impactado a la ciudadanía como resultado del delito cometido".

Asimismo, Corrección tiene la potestad de suspender un permiso de salida "cuando la seguridad del propio miembro de la población correccional o de la comunidad se considere amenazada con la concesión del permiso". Art. VI (3) del Reglamento. A su vez, la distancia de la residencia del solicitante del pase a la residencia

de la parte perjudicada es una de las áreas que se verifican para asegurarse que el Informe de Investigación del Negociado de Programas Especiales y de Rehabilitación sea uno positivo. Art. VIII (3) del Reglamento.

IV.

Como cuestión de umbral, aclaramos que los pases, del tipo aquí solicitado, se conceden exclusivamente sobre la "base de los méritos de cada caso", y no serán concedidos "como un derecho, ni una merced, sino como una medida de tratamiento individualizado". Art. VI (1) y (5) del Reglamento. Asimismo, Corrección tiene la facultad de imponer los requisitos que entienda procedentes y necesarios para conceder permisos de salida.

Aclarado lo anterior, de una cuidadosa revisión del récord, no surge que la determinación de Corrección sea irrazonable o de alguna forma contraria a derecho. Aunque el Recurrente en algún momento disfrutó de pases familiares, ello ocurrió **antes** de que fuese acusado y condenado en la esfera federal por una infracción al RICO, por hechos cometidos mientras cumplía su condena local. Más importante aún, no hay controversia sobre el hecho de que el Recurrente tiene un *detainer*, pues está cumpliendo la correspondiente sentencia de prisión federal. Por dicha razón, y de conformidad con el claro texto del Reglamento, como cuestión de derecho, este sencillamente no es actualmente elegible para disfrutar de los pases familiares.[2]

Finalmente, y contrario a lo planteado por el Recurrente, por tratarse de un asunto de derecho, determinado por el Reglamento,

---

[2] Resaltamos, además, que obran en el récord otras razones para denegar el permiso solicitado, como por ejemplo la oposición de las partes perjudicadas, la distancia entre la residencia propuesta por el solicitante y la residencia de las víctimas, y la confidencia recibida en torno al riesgo a la seguridad del Recurrente. El Artículo 21 de la Parte V (Programas de Desvío) del Plan de Reorganización prohíbe que se divulgue "toda información obtenida por alguno de los funcionarios o empleados en el desempeño de sus labores oficiales", salvo contadas excepciones detalladas en dicho artículo. 3 LPRA Ap. XVIII.

no tiene pertinencia que Corrección haya descansado en otras consideraciones para denegar la solicitud del Recurrente. Adviértase que los tribunales apelativos revisan la decisión y no los fundamentos utilizados por los foros recurridos. *SLG Semidey Vázquez v. ASIFAL*, 177 DPR 657, 693 (2009); *Rosado Vda. de Rivera v. Rivera et al.*, 155 DPR 17, 18-19 (2001); *Anselmo García Dist. v. Sucn. Anselmo García*, 153 DPR 427, 428 (2001).

V.

En atención a todos los fundamentos antes expresados, se confirma el dictamen recurrido.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones