DELFINA COLÓN GUTIÉRREZ, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE GUAYAMA, recurrido.

Número: O-83-220     Resuelto: 9 de diciembre de 1983

*Livia E. Rovira de Fuster*, abogada de la recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Mediante una escritura sobre "Segregación y Adjudicación"(¹) los miembros de una sucesión, como comparecientes de la *primera* parte, segregaron una "parcela" de una finca de cinco cuerdas y se la adjudicaron, en pago total de su haber hereditario, a la aquí recurrente, compareciente de la *segunda* parte, hecho que esta última "así acepta y se da por pagada".

En la referida escritura, en adición a los ya mencionados otorgantes, comparecieron doña Enriqueta Colón Bernier y

---

(¹) Escritura número 44 de fecha 1ro de diciembre de 1982 otorgada ante la Notario Livia E. Rovira de Fuster.

don Clotilde Lebrón Vázquez —como comparecientes de la *tercera* parte— quienes son cónyuges supérstites de dos de los herederos originales *y cuya comparecencia fue a los únicos efectos de* "indicar que la finca que más adelante se dirá [la de cinco cuerdas objeto de la escritura] era un bien privativo de sus respectivos cónyuges y que por su usufructo viudal en la referida finca, recibirán otros valores". (²)

Al final de la mencionada escritura se hizo constar que "los comparecientes aceptan esta escritura en todas sus partes por estar redactada de acuerdo con sus instrucciones", y que leída "esta escritura por los otorgantes personalmente, en la misma se ratifican". Aparece, al final de la escritura, la firma de todos los comparecientes.

Presentada la escritura para su inscripción, el señor registrador denegó la misma por el fundamento de que faltaba "el consentimiento expreso de Enriqueta Colón Bernier y Clotilde Lebrón Vázquez para la segregación y adjudicación que comprende dicho documento, a tenor con lo dispuesto en el Artículo 95 de la Ley y el Artículo 102.1 del Reglamento". (³)

Mediante la radicación del correspondiente recurso gubernativo acude ante este Tribunal la recurrente Delfina Colón Gutiérrez y alega, en síntesis, que erró el señor registrador al denegar la inscripción solicitada por cuanto el consentimiento a que se refiere el Art. 95 de la nueva Ley Hipotecaria, 30 L.P.R.A. sec. 2316, —al requerir el consentimiento de "todos los *interesados"*— es el de los titulares

---

(²) El Art. 765 de nuestro Código Civil, 31 L.P.R.A. sec. 2415, dispone:

"Los herederos podrán satisfacer al cónyuge su parte de usufructo, asignándole una renta vitalicia, o los productos de determinados bienes, o un capital en efectivo, procediendo de mutuo acuerdo, y, en su defecto, por virtud de mandato judicial.

"Mientras esto no se realice, *estarán afectos todos los bienes de la herencia* al pago de la parte de usufructo que corresponda al cónyuge viudo." (Énfasis suplido.)

(³) Radicado en tiempo escrito de recalificación, el registrador ratificó su denegatoria original.

del derecho de dominio y no el de los titulares de un derecho real, como es el de usufructo. En la alternativa, alega la recurrente que los citados cónyuges supérstites de todas formas consintieron en vista de lo expresado al final de la escritura a los efectos de que todos los comparecientes "aceptan y ratifican" la misma. No le asiste la razón; veamos por qué.

I

El citado Art. 95 de la nueva Ley Hipotecaria y del Registro de la Propiedad de 1979([4]) define y regula los procedimientos de inscripción en el Registro de la Propiedad de los títulos y derechos hereditarios. En lo pertinente a la controversia aquí planteada, dicha disposición legal dispone:

Para inscribir adjudicaciones concretas, deberán determinarse en escritura pública o por resolución judicial firme, los bienes o partes indivisas de los mismos que correspondan o se adjudiquen a cada titular o heredero, *o también escritura pública a la cual hayan prestado su consentimiento todos los interesados*, si se adjudicare solamente una parte del caudal y aquéllos tuvieren la libre disposición del mismo.([5]) (Énfasis suplido.)

---

([4]) Ley Núm. 198 de 8 de agosto de 1979, según enmendada.

([5]) El historial legislativo específico relativo a este artículo es muy pobre. Únicamente encontramos expresiones al efecto de que en "el Artículo 95 propuesto, se incluye una disposición inspirada en la legislación española, muy acorde con el Código Civil en cuanto a la naturaleza del derecho hereditario. Se incluye expresamente, para que no haya dudas, que las enajenaciones de cuotas específicas no adjudicadas, no serán inscribibles. Esto para la defensa de posteriores adquirentes contra condiciones no expresas, pues es sabido que dichas enajenaciones quedan sujetas a futuras particiones entre los herederos. Queda claro que la totalidad o parte del derecho hereditario, en abstracto, sí es enajenable". 33 *Diario de Sesiones de la Asamblea Legislativa* 1122–1123 (1979). Un examen de la legislación hipotecaria española —Ley de 30 de diciembre de 1944, aprobada por Decreto de 8 de febrero de 1946 y su Reglamento de 14 de febrero de 1947— revela que la fuente del citado Art. 95 lo es el Art. 14 de la citada Ley de 30 de diciembre de 1944 y del Art. 83 del correspondiente reglamento.

Como vemos el citado precepto legal contempla la inscripción de adjudicaciones concretas —ya sean las mismas voluntariamente realizadas por los herederos o por resolución judicial firme— en pago de las participaciones hereditarias. Estas adjudicaciones podrían ser totales o parciales, dependiendo, naturalmente, de si se adjudica toda la masa hereditaria o solamente parte de ésta a uno o más de los herederos. En el presente caso, de acuerdo con los hechos anteriormente reseñados, se trata de una adjudicación parcial en donde únicamente se adjudica la participación correspondiente a uno de los herederos.

Los miembros de la sucesión aquí en controversia escogieron, para así hacerlo, el vehículo jurídico de la segregación. Debemos determinar si la escritura pública a esos efectos otorgada debe tener acceso al Registro de la Propiedad.

■ Como norma general el acto jurídico de segregar se considera un acto de dominio mediante el cual el dueño de una finca ejercita su discreción y potestad con el fin de separar una parte de su finca para formar una nueva. *Mattei* v. *Registrador*, 94 D.P.R. 467 (1967); *Diez* v. *Registrador de la Propiedad*, 12 D.P.R. 4 (1907); R. M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. II, págs. 515 y 519.

■ Tratándose de un acto de dominio la doctrina postula, en general, que no se requiere que consientan a la segregación los titulares de los *derechos reales* que gravan la finca en cuestión. J. L. Lacruz Berdejo, *Derecho Inmobiliario Registral*, Barcelona, Ed. Bosch, 1977, pág. 91; Roca Sastre, *op. cit.*, pág. 520.

■ Consecuencia de ello es que, de ordinario, no se requiere el consentimiento o expresión afirmativa de un usufructuario para que el nudo propietario pueda segregar su finca. Así se sostuvo por la Dirección General de los Registros y del Notariado de España en la R. de 24 de diciembre de 1934 y en la R. de 27 de diciembre de 1934.

Véase: R. M. Roca Sastre y J. de Molina Juyol, *Jurisprudencia Registral*, Barcelona, Ed. Bosch, 1953, T. VII, págs. 588 y 594. La única condición que se requiere es que al efectuarse la segregación no se modifique la función económica y social de la finca ni se perjudique al usufructuario en las facultades que le reconoce el ordenamiento.[6]

■ En el presente caso, sin embargo, no estamos ante un simple acto de segregación realizado por un dómine. Hemos visto que en el caso de autos la finca objeto de segregación es parte integrante de un caudal hereditario. El propósito del negocio jurídico recogido en la escritura en controversia es precisamente segregar de la finca matriz una parcela para adjudicar la misma a uno de los herederos en pago de su haber hereditario, provocando así la transformación de la participación abstracta de dicho heredero en el caudal hereditario, en una titularidad concreta sobre un bien determinado. En otras palabras, estamos en presencia de una operación particional,[7] en la etapa o fase de la división y adjudicación.[8]

■ Siendo ello así, en el presente caso no se trata meramente de definir quiénes son los titulares de derechos cuyo consentimiento se requiere al efectuarse una segre-

---

[6] Véase, R. de 24 de diciembre de 1934, R. M. Roca Sastre y J. de Molina Juyol, *Jurisprudencia Registral*, Barcelona, Ed. Bosch, 1953, T. VII, pág. 588.

[7] Puig Brutau, citando a Roca Sastre, define *partición* como "aquel acto jurídico, unilateral o plurilateral, necesario e irrevocable, de naturaleza declarativa, compuesto de un conjunto ordenado de operaciones, verificadas sobre ciertas bases o supuestos de hecho y de derecho, y en el cual, después de determinarse el activo y el pasivo de la masa hereditaria y de proceder a su avalúo y liquidación, se fija el haber de cada partícipe, se divide el caudal partible y se adjudica cada lote de bienes formado a cada heredero respectivo, provocando la transformación de las participaciones abstractas de los coherederos sobre el patrimonio relicto (derecho hereditario) en titularidades concretas sobre bienes determinados (dominio o propiedad exclusiva y ordinaria)". J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, T. V, Vol. III, págs. 460-461.

[8] Citando a Espín Cánovas, Puig Brutau, en lo referente a las operaciones particionales, establece tres etapas, a saber: inventario y avalúo, liquidación, y división y adjudicación. *Id.*, pág. 580.

gación. Se trata, por el contrario, de precisar quiénes son los llamados a participar, y consentir, en una operación particional.

■ La doctrina es clara a los efectos de que se requiere el consentimiento de *todos los herederos* en la partición que se realice.([9]) Dicho principio está plasmado en los Arts. 1011 y 1012 de nuestro Código Civil.([10]) Estamos obligados a precisar, en su consecuencia, la condición del cónyuge viudo, es decir, si éste se reputa o no como heredero.

En España, un sector de la doctrina niega toda posibilidad de considerarlo como tal al sostener que sus derechos y facultades respecto al caudal hereditario derivan de su condición de legitimario.([11]) Otro sector lo ha tratado como heredero a los efectos de descalificarlo como contador partidor, para la reivindicación de bienes hereditarios, y otra serie de situaciones inherentes al Derecho sucesorio.([12])

Al interpretar el Art. 736 de nuestro Código Civil, 31 L.P.R.A. sec. 2362([13]) este Tribunal, en el caso de *Luce & Co.*

---

([9]) "El principio de unanimidad en la partición por los herederos es básico en nuestro sistema positivo. en cuanto falte la voluntad de uno solo de ellos deberá acudirse a la partición judicial, ejercitando la correspondiente *actio familiae erciscundae*, de acuerdo con las normas del juicio de testamentaría, en el cual, bajo el 'control' judicial, actuará incluso la teoría del silencio. El llamado principio de unanimidad está consagrado en nuestro Derecho por dichos arts. 1.058 y 1.059 y otros del Código civil. . . ." R. M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. III, pág. 763.

([10]) 31 L.P.R.A. sec. 2877:
"Cuando el testador no hubiese hecho la partición, ni encomendado a otro esta facultad, si los herederos fueren mayores y tuvieren la libre administración de sus bienes, podrán distribuir la herencia de la manera que tengan por conveniente."

31 L.P.R.A. sec. 2878:
"Cuando los herederos mayores de edad no se entendieren sobre el modo de hacer la partición, quedará a salvo su derecho para que lo ejerciten en la forma prevenida en los preceptos sobre procedimientos legales especiales."

([11]) Véase: Puig Brutau, *op. cit.*, págs. 110-133.

([12]) Puig Brutau, *op. cit.*

([13]) "Son herederos forzosos:
"1. Los hijos y descendientes legítimos respecto de sus padres y ascendientes

v. *Cianchini*, 76 D.P.R. 165 (1954), "adoptó" la teoría que considera al cónyuge viudo como un heredero forzoso.[14] En *González de Salas* v. *Vda. de González*, 99 D.P.R. 577, 585 (1971), nos reafirmamos expresamente en dicha posición.

■ Ahora bien, independientemente de que se considere al cónyuge viudo como legitimario o como heredero,[15] los comentaristas están acordes en que el cónyuge viudo debe concurrir en las operaciones particionales. Así, por ejemplo, J. M. Manresa, en su *Comentarios al Código Civil español*, 8va ed., Madrid, Ed. Reus, S.A., T. VI, Vol. I, pág. 930, expresa que "el consentimiento del cónyuge es indispensable para la validez de las operaciones particionales, y, por tanto, para que los herederos propietarios puedan enajenar o gravar los bienes hereditarios". Aun Puig Brutau, quien es uno de los autores que rechaza que el cónyuge viudo sea heredero, expresa que es "muy cierto que el viudo, sin necesidad de ser heredero, ostenta un interés bastante poderoso para que se le deba tener en cuenta en las operaciones divisorias . . .".[16] Por último, y a estos mismos efectos, tenemos la sentencia de 26 de marzo de 1940 emitida por el Tribunal Supremo de España en que se sostuvo que *"no es inscribible la partición en que no interviene la viuda de uno*

---

legítimos, y los hijos naturales legalmente reconocidos respecto de sus padres y ascendientes naturales o legítimos.

"2. A falta de los anteriores, los padres y ascendientes legítimos respecto de sus hijos y descendientes legítimos.

"3. *El viudo o viuda en la forma o medida que establecen las secs. 2411, 2412, 2413 y 2414 de este título.*" (Énfasis suplido.)

[14] En el escolio 5 del citado caso expresamos:

"Los comentaristas no están acordes en cuanto a este punto, pero nos decidimos por la doctrina y la jurisprudencia española que afirman el carácter de heredero forzoso del cónyuge viudo. 14 Scaevola, Código Civil, 213 y 678; 6 Manresa, ob. cit. [*sic*], 302. Este carácter lo dan los propios artículos 730 y 736 de nuestro Código Civil. Contra: 8 Colin y Capitant, ob cit. [*sic*], 327."

[15] Para una distinción entre legitimario y heredero, véase Puig Brutau, *op. cit.*, págs. 110-133.

[16] Puig Brutau, *op. cit.*, pág. 112.

*de los hijos del causante, fallecido con posterioridad a éste, por ser preciso el consentimiento de todos los interesados"*.([17])

■ En virtud de todo lo anteriormente expresado, resolvemos que, como regla general, para que puedan inscribirse en el Registro de la Propiedad adjudicaciones concretas conforme lo dispuesto por el referido Art. 95 de la nueva Ley Hipotecaria es menester que haya prestado su consentimiento el cónyuge viudo en la escritura pública comprensiva de la transacción que se realice por ser éste uno de los "interesados" a que se refiere dicha disposición legal.

## II

Lo anteriormente expresado, sin embargo, no es suficiente, por sí solo, para disponer del caso de autos. La regla general antes expuesta tiene una muy importante excepción, a saber: lo que se denomina en el Derecho sucesorio como una conversión o sustitución del usufructo viudal.([18]) Como sabemos ello implica que, en cumplimiento de las disposiciones del citado Art. 765 del Código Civil,([19]) los herederos le han satisfecho su cuota al cónyuge viudo asignándole una renta vitalicia, o los productos de determinados bienes, o un capital en efectivo.([20])

■ Nos resta por determinar, por lo tanto, si en el presente caso hubo o no una conversión o sustitución en relación con el usufructo viudal de los dos cónyuges supérs-

---

([17]) *Repertorio de Jurisprudencia*, Aranzadi, T. VII, S. Núm. 282, págs. 177, 178.

([18]) Las autoridades han utilizado indistintamente los conceptos *conversión, sustitución* o *conmutación* al referirse a esta figura. Véase, J. L. Lacruz Berdejo, *Derecho de Sucesiones*, Barcelona, Ed. Bosch, Vol. II, pág. 95; Puig Brutau, *op. cit.*, pág. 140; Manresa, *op. cit.*, pág. 921; E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ramallo Bros. Printing, 1983, Vol. I, pág. 93.

([19]) Escolio número 2, *ante*.

([20]) Ese fue el obvio propósito de la antes transcrita aseveración que aparece en la escritura aquí en controversia a los efectos de que los referidos cónyuges supérstites "comparecen para indicar . . . que por su usufructo viudal en la referida finca, recibirán otros valores".

tites. Dicha determinación es sumamente importante, ya que hasta tanto la conmutación o conversión se efectúe estarán afectos al pago de la referida cuota viudal usufructuaria *todos* los bienes de la herencia. En palabras de Manresa, se trata "de una garantía pa[ra] asegurar el pago de lo que si bien puede ser un derecho real, autoriza la ley para que se convierta en una obligación de los herederos propietarios". Manresa, *op. cit.*, pág. 929. ([21])

Como corolario de lo anteriormente expresado, una vez es satisfecha o efectivamente asegurada la cuota usufructuaria viudal no hay razón legal alguna para requerir la participación o consentimiento del cónyuge supérstite en las actividades particionales que realicen los otros herederos. ([22]) Véanse: Manresa, *op. cit.*, págs. 929–930; Puig Brutau, *op. cit.*, pág. 147. Consecuencia de lo anteriormente expresado es que de haber ocurrido así en el caso que nos ocupa, resultaría innecesario requerir que los dos cónyuges supérstites hubiesen prestado su consentimiento en la escritura pública sobre segregación y adjudicación.

Ahora bien, desde el punto de vista de la manera en que procede, la doctrina sostiene que la elección de la

---

([21]) La doctrina ha discutido extensamente la naturaleza de este gravamen. La posición moderna descarta la posibilidad de que se trate de una hipoteca legal tácita o de un derecho objeto de anotación preventiva.

En lugar de ello han explicado el gravamen a base del mismo derecho real de usufructo en términos de que está latente en todas y cada una de las partes de los bienes y derechos de la herencia mientras no se satisfaga al viudo su legítima en cualesquiera de los modos provistos en el antes citado Art. 765 del Código Civil. Véase: J. Vallet de Goytisolo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Revista de Derecho Privado, 1978, T. XI, pág. 450.

Nuestra Ley Hipotecaria de 1979 incluyó, en su Art. 112, la providencia de la anotación preventiva en relación con esta materia. En el 1980, se enmienda la ley para eliminar la misma. El propósito de dicha enmienda eliminatoria, en nuestra opinión, fue el equiparar nuestra ley a la referida doctrina moderna.

([22]) Este hecho —de que ha habido una válida sustitución o conversión— deberá ser demostrado a satisfacción de los señores registradores de la propiedad por el "solicitante", utilizando los medios que autoriza la ley y la jurisprudencia, como requisito necesario para inscribir la partición que contenga conmutación del usufructo viudal. J.L. Mezquita del Cacho, *Conmutación del Usufructo Viudal Común*, 15 Rev. Der. Not. 213, 283 (1957).

forma de satisfacer la legítima viudal sólo puede ser ejercitada una vez y antes, o al momento, de efectuarse la partición. J. Vallet de Goytisolo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. de Derecho Privado, 1978, T. XI, pág. 448. Para que queden adecuadamente protegidos los derechos del cónyuge supérstite, deberá valorizarse su cuota vidual tomando en consideración el valor de los bienes al momento de efectuarse la conversión o conmutación.[23]

Expresa Manresa que ese "derecho de garantía, que aparece al nacer el derecho o legítima del viudo, se extingue en cuanto se realiza el pago de esa legítima, en cuanto se determinan los bienes sobre que recae el usufructo o en cuanto se asegura al cónyuge el cobro de determinada renta o productos".[24] Por último, expresa el mismo autor que pensar "que la garantía desaparece sólo porque los herederos se obliguen en forma solemne a pagar renta o productos, nos parece absurdo".[25]

Al aplicar estos postulados al caso de autos, notamos que ni de la escritura en controversia ni de los documentos suplementarios surge que tratándose de una conversión de usufructo se les haya *asegurado* a los cónyuges el pago de sus respectivos derechos *de una manera real y efectiva*.[26] La mera aseveración a los efectos de que los mencionados cónyuges supérstites indican que "por su usufructo viudal en la referida finca, recibirán otros valores" no es ni puede ser suficiente.[27]

---

[23] Sobre la valorización del usufructo viudal, véase: *Calimano Díaz* v. *Rovira Calimano*, 113 D.P.R. 702 (1983).

[24] Manresa, *op. cit.*, pág. 930.

[25] Manresa, *op. cit.* pág. 930.

[26] Abundando un poco sobre la necesidad de *asegurar el pago* del derecho del viudo en caso de sustitución, Vallet expresa que "será cuestión del cónyuge viudo y de los herederos convenir las garantías que aseguren su pago, y, a falta de acuerdo, deberá imponerlas la autoridad judicial". Vallet, *op. cit.*, pág. 451.

[27] Obsérvese que en el presente caso la aseveración sobre promesa de pago

Como no se ha realizado en el presente caso la sustitución conforme lo requiere la doctrina, resulta obligatoria la conclusión de que era necesario la comparecencia y el consentimiento de doña Enriqueta Colón Bernier y de don Clotilde Lebrón Vázquez para la segregación y adjudicación aquí practicada por razón de contar éstos, al momento de otorgarse la escritura, con un derecho indiferenciado sobre los bienes del activo hereditario.

## III

Como consecuencia de lo anteriormente expresado, debemos resolver si los dos cónyuges supérstites, como alega la parte recurrente en la alternativa, prestaron su consentimiento a la segregación y adjudicación efectuada.

Es un hecho incontrovertido, que los cónyuges supérstites comparecieron en dicha escritura y que firmaron e iniciaron la misma. Fundado en ello, la parte recurrente alega que hubo una aceptación tácita o implícita de la transacción efectuada por parte de dichos cónyuges.

▆▆▆ No tiene razón; resolver conforme lo alegado, equivaldría a determinar que la *mera* comparecencia en una escritura pública equivale al consentimiento que requiere el citado Art. 95 de la nueva Ley Hipotecaria.

No podemos sustraernos del hecho de que la comparecencia de los cónyuges en la referida escritura fue, repetimos, a los únicos efectos de "indicar que la finca que más adelante se describe era un bien privativo de sus respectivos cónyuges y que por su usufructo viudal en la referida finca, recibirán otros valores". [28]

Los cónyuges no fueron hechos partícipes en las partes dispositivas de la escritura, correspondientes a la segre-

---

futuro de la cuota usufructuaria viudal que aparece en la escritura, no proviene de los otros herederos —situación que, como vemos, Manresa considera insuficiente—, sino de los propios cónyuges supérstites.

[28] Ya hemos visto que dicha "promesa" no es suficiente en derecho para ser considerada como una válida y eficaz conversión.

gación y adjudicación efectuada. Dicha escritura no contiene una renuncia expresa de los cónyuges, en relación con el bien inmueble que es objeto de la misma, de la "garantía" que establece el citado Art. 765 de nuestro Código Civil,[29] como tampoco contiene la referida escritura una terminología precisa y clara a los efectos de que los cónyuges consienten a la transacción específica efectuada.

■ Por último, sabido es que, para que se entienda prestado el consentimiento a un negocio jurídico, ya expresa o implícitamente, es necesario que el declarante tenga *conocimiento adecuado* del alcance de su declaración. Federico De Castro y Bravo, *El Negocio Jurídico*, Madrid, Gráficas Marisal, 1971, pág. 58; J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1978, T. II, Vol. I, pág. 77. En palabras de Núñez-Lagos, el "notario de buen consejo debía advertir a los comparecientes la significación y consecuencias legales de las cláusulas del instrumento, a fin de que las partes quedaran perfectamente cercioradas de la significación y alcance de sus actos. Cerciorada la parte no podía alegar ignorancia". (Escolio omitido.)[30] En otras palabras, el ejercicio válido de una facultad presupone el previo conocimiento de la plenitud de la misma. Es obvio que ésta no fue la situación en el caso de autos.[31]

---

[29] Véase, en relación con los derechos de terceros, Mezquita del Cacho, *op. cit.*, págs. 282–283.

[30] R. Núñez-Lagos, *Los Esquemas Conceptuales del Instrumento Público*, 1-2 Rev. Der. Not. 49, 126 (1953).

[31] Es de rigor señalar que el notario ante el cual se otorgó la escritura aquí en controversia es el que precisamente ha comparecido ante este Tribunal para negar toda posible prerrogativa de los titulares de la cuota viudal usufructuaria. En su consecuencia, difícilmente puede argumentarse que los cónyuges supérstites en el presente caso fueron adecuadamente asesorados en cuanto al alcance de sus derechos, los efectos que sobre los mismos tiene la escritura otorgada, y las consecuencias de la misma. Debe quedar claro, sin embargo, que dicha falta de asesoramiento adecuado no se debe ni a negligencia del notario ni a la mala fe del mismo. Recuérdese que la presente ponencia es la primera ocasión en

*La calificación del Señor Registrador debe ser confirmada.*

El Juez Asociado Señor Negrón García concurre y disiente con opinión.

—O—

Opinión concurrente y disidente del Juez Asociado Señor Negrón García.

Coincidimos en que no se cumplió satisfactoriamente con el Art. 95 de la Ley Hipotecaria y el Art. 102.1 del Reglamento en cuanto a plasmar de manera suficiente en la escritura objeto del presente recurso gubernativo, la intención y validez del consentimiento a la segregación y adjudicación atribuida a los cónyuges supérstites Enriqueta Colón Bernier y Clotilde Lebrón Vázquez. Ello dispone del recurso.

I

Sin embargo, tenemos reservas en torno a la interpretación del Art. 765 del Código Civil, 31 L.P.R.A. sec. 2415, dispositivo de un gravamen temporal y general sobre los bienes de la herencia, con el propósito de garantizar el pago de la cuota de usufructo viudal. Aunque no se expone expresamente, la premisa en que descansa la ponencia en su Parte II está predicada en la conclusión de que el viudo y los herederos están impedidos de realizar transacciones *parciales* hasta tanto medie una partición final o una conversión o sustitución de la referida cuota usufructuaria. Así, la opinión pone énfasis y adopta el criterio de Manresa que caracteriza de *absurdo* sostener "que la garantía desaparece sólo porque los herederos se obliguen en forma solemne a pagar rentas o productos . . .". J. M. Manresa, *Comentarios*

---

que este Tribunal ha interpretado el citado Art. 95 de la nueva Ley Hipotecaria y del Registro de la Propiedad de 1979.

*al Código Civil español,* 8va ed., Madrid, Ed. Reus, S.A., 1973, T. VI, Vol. I, pág. 930.

Si bien es necesario el consentimiento del cónyuge para la validez de las operaciones de partición, también se reconoce que ese derecho adquirido puede ser renunciado y aun enajenado. Manresa, *op. cit.,* págs. 934–935. Nos preguntamos: si se admite la renuncia total del derecho al usufructo, ¿cabe en buena lógica interpretar el Art. 765 restrictivamente, como el que prohíbe a un cónyuge supérstite el desistir parcialmente de la garantía legal consagrada en este articulado, a menos que se le haya *asegurado* el pago "de una manera real y efectiva"?