ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| REBECCA ANN WISOTSKY Y OTROS<br><br>Apelantes<br><br>v.<br><br>MIEMBROS DE LA SUCESIÓN DE CARLOS EDGAR CHICÓN CARRIÓN Y OTROS<br><br>Apelados | TA2025AP00618 | Recurso de *Apelación*, procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV05788<br><br>Sobre: División o Liquidación de la Comunidad de Bienes Hereditarios |

Panel integrado por su presidente el Juez Adames Soto, la Juez Aldebol Mora y la Juez Prats Palerm.

Prats Palerm, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de enero de 2026.

Comparece la Sucesión de Myrna Gladys Cruz Carrión, integrada por sus miembros, Rebecca Ann y Alexandra Lorraine, ambas de apellido Wisotsky (en conjunto, "apelantes" o "parte apelante"), mediante *Apelación* y nos solicita que revoquemos la *Sentencia* emitida el 25 de septiembre de 2025, notificada el 26 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("TPI"). En virtud del aludido dictamen, el TPI declaró No Ha Lugar la demanda sobre división o liquidación de la comunidad de bienes hereditarios de la Sucesión de Georgina Carrión Torres instada por las apelantes.

Por los fundamentos que proceden, se *revoca* en parte y se *confirma* en parte la *Sentencia* apelada.

**I.**

El 16 de junio de 2023, enmendada el 16 de noviembre de 2023, la Sucesión de Myrna Gladys Cruz Carrión presentó una *Demanda* sobre liquidación de la comunidad hereditaria en contra de la Sucesión de Georgina Carrión Torres y Jacinto Font Carrión.

La parte apelante señaló que interesaba liquidar la comunidad hereditaria que se creó con el fallecimiento de doña Georgina Carrión Torres, el 24 de abril

de 2006. Manifestaron que, según Resolución de Declaratoria de Herederos emitida en el caso KJV 2007-2811, los integrantes de la **Sucesión de Georgina Carrión Torres** eran los siguientes:

1. **Myrna Gladys Cruz Carrión;**
2. **Héctor René Cruz Carrión;**
3. **Carlos Edgar Chicón Carrión;**
4. **José Raúl Chicón Carrión;**
5. **Juan Alberto Chicón Carrión, representado por sus hijos, Harold Alberto, Howard y Sergio, todos de apellidos Chicón Tejeda, y Katherine Chicón Sepúlveda.**

Esbozaron que, el 26 de febrero de 2013, falleció Héctor René Cruz Carrión. Relataron que, por Resolución de Declaratoria de Herederos emitida en el caso KJV 2013-1408, los integrantes de la **Sucesión Héctor René Cruz Carrión** eran los siguientes:

1. **Myrna Gladys Cruz Carrión;**
2. **Carlos Edgar;**
3. **José Raúl Chicón Carrión; y**
4. **Juan Alberto Chicón Carrión, representado por sus hijos, Harold Alberto, Howard y Sergio, todos de apellidos Chicón Tejeda, y Katherine Chicón Sepúlveda.**

Igualmente, adujeron que, Carlos Edgar Chicón Carrión falleció en una fecha desconocida. Por información y creencia, expusieron que la **Sucesión Carlos Édgar Cruz Carrión** estaba compuesta por los siguientes integrantes:

1. **Carlos Juan Chicón; y**
2. **Fulano de Tal Chicón.**

De manera similar, expresaron que José Raúl Chicón Carrión falleció en una fecha desconocida. Por información y creencia, sostuvieron que la **Sucesión José Raúl Chicón Carrión** podría estar compuesta por:

1. **María Cristina Hernández; y**
2. **Perencejo de Tal.**

Estipularon que el caudal hereditario de doña Georgina Carrión Torres estaba compuesto por: (1) un bien inmueble ubicado en San Juan; y (2) un Certificado de Depósito ("CD") y una cuenta de cheques, cuyos fondos se encontraban en la Oficina del Comisionado de Instituciones Financieras ("OCIF"). En cuanto al dinero depositado en las cuentas, expresaron que estarían solicitando una orden para que la OCIF consignara los fondos en el Tribunal.

Con relación a la propiedad inmueble, destacaron que no deseaban permanecer en la indivisión e interesan vender el inmueble. Precisaron que doña

Georgina heredó una participación alícuota de sus padres, quienes tuvieron once (11) herederos. Alegaron que doña Georgina logró comprar diez (10) participaciones del referido inmueble, pero nunca logró adquirir la onceava participación, perteneciente a Jacinto Font Carrión, con quien nunca tuvo contacto. Sostuvieron que, tanto su abuela como ellos, nunca conocieron el paradero de Jacinto Font Carrión, a quien incluyen como demandado por poseer 1/11 partes del bien.

Además, entre las participaciones adquiridas por doña Georgina alegaron que dos (2) de ellas, no lograron acceso al Registro de la Propiedad, por falta de tracto. Particularizaron que, en virtud de la Escritura Núm. 25 sobre Cesión de Derechos, del 30 de marzo de 1993, doña Georgina adquirió de sus sobrinas, Ayleen e Ileana Carrión Maldonado, la participación de Manuel Carrión Torres. De manera similar, adujeron que, en virtud de la Escritura Núm. 21 sobre Compraventa de Participación Proindivisa, del 10 de mayo de 2000, adquirió de su sobrino, Emilio Geraldo Carrión Matos, la participación de Emilio Carrión Torres. Así las cosas, solicitaron que se emitiera una orden al Registrador de la Propiedad, con el fin de que los negocios jurídicos ganaran acceso al Registro. En atención a ello, incluyeron como demandados a la **Sucesión Manuel Carrión Torres**, compuesta, por información y creencia por:

1. **Ayleen Carrión Maldonado;**
2. **Ileana Carrión Maldonado; y**
3. **ABC, miembros desconocidos.**

Al igual, incluyeron como demandados a la **Sucesión Emilio Carrión Torres**, compuesta, por información y creencia, por:

1. **Emilio Geraldo Carrión Matos; y**
2. **XYZ, miembros desconocidos.**

Tras varias instancias, el 24 de abril de 2024, la OCIF informó que consignó la cantidad de $13,722.93 en la Secretaría del TPI, correspondiente a la cuenta de cheques y el CD que se encontraban a nombre de Georgina Carrión Torres.

Posteriormente, el 5 de junio de 2024, el foro de instancia emitió una *Orden* mediante la cual le advirtió a los apelantes que no habían presentado las

certificaciones de relevo o gravamen contributivo sobre el caudal relicto necesarias para la liquidación de la comunidad hereditaria. Como corolario, le otorgó un plazo de veinte (20) días para presentar la documentación requerida. En respuesta, el 6 de junio de 2024, la parte apelante instó una *Moción en Cumplimiento de Orden*, a la cual anejó las Planillas sobre Caudal Relicto y los respectivos relevos contributivos de Georgina Carrión Torres, Héctor René Cruz Carrión y Myrna Gladys Cruz Carrión.

A petición de parte, el 6 de junio de 2024, notificada el día siguiente, el TPI dictaminó una *Resolución* en virtud de la cual le anotó la rebeldía a las Sucesiones de Emilio Carrión Torres, Manuel Carrión Torres, Carlos E. Chicón Carrión y de José Raúl Chicón Carrión, así como a Jacinto Font Carrión o sus posibles herederos. Asimismo, denegó la solicitud para inscribir en el Registro de la Propiedad las participaciones de Manuel y Emilio Carrión Torres a nombre de doña Georgina, por falta de jurisdicción. Razonó que la parte que está inconforme con la calificación de un documento por el Registrador de la Propiedad debe, en primera instancia, solicitar oportunamente su recalificación. Detalló que, en caso de no prevalecer en la recalificación, el Tribunal Supremo tiene jurisdicción primaria exclusiva para atender los recursos gubernativos contra las calificaciones del Registrador de la Propiedad.

Inconformes, el 11 de julio de 2024, los apelantes acudieron ante este foro apelativo intermedio mediante *certiorari*, clasificado alfanuméricamente como KLCE202400773. El 16 de septiembre de 2024 emitimos una *Resolución* mediante la cual denegamos intervenir en esa etapa de los procedimientos.

Luego de varios trámites, el 23 de mayo de 2025, la parte apelante radicó una *Moción para que dicte Sentencia Declaratoria Parcial bajo la Regla 59.1 de Procedimiento Civil*. Expresaron que, en virtud de una orden emitida por el foro de instancia, obtuvieron las certificaciones acreditativas de testamento de Manuel y Emilio Carrión Torres. Señalaron que Emilio Carrión nunca otorgó testamento y que, a pesar de innumerables búsquedas tampoco encontraron una Petición de Declaratoria de Herederos. Por el contrario, sostuvieron que Manuel Carrión Torres otorgó un testamento abierto en virtud del cual instituyó

como sus únicas y universales herederas a sus hijas, Ileana y Ayleen Carrión Maldonado.

Siendo así, arguyeron que, según la prueba documental, doña Georgina Carrión adquirió a través de escrituras públicas las participaciones correspondientes a Emilio y Manuel Carrión Torres de sus respectivos herederos. Por tanto, solicitaron que el foro de instancia dictara Sentencia Declaratoria, a los fines de declarar que Georgina Carrión Torres adquirió por compra las participaciones que les correspondían a sus hermanos, Manuel y Emilio Carrión Torres.

Atendidos los argumentos de los apelantes, el 25 de septiembre de 2025, notificada el día siguiente, el TPI emitió una *Sentencia* en virtud de la cual declaró No Ha Lugar la demanda de epígrafe. Concluyó que las Escrituras 21 y 25 no tuvieron el efecto de traspasar un interés propietario a Georgina Carrión Torres, debido a que no comparecieron las viudas de Emilio y Manuel Carrión Torres, quienes tampoco fueron incluidas en el caso de autos. Más aún, expuso que las Escrituras fueron otorgadas sin Relevo de Hacienda. Razonó que, en el mejor de los casos, Georgina Carrión Torres adquirió el derecho a participar en la liquidación de las herencias de Manuel y Emilio Carrión Torres, junto con sus otros herederos. Precisó que tales liquidaciones no se pueden tramitar sin la certificación de gravamen que emite el Secretario de Hacienda, luego de sometidas las planillas de caudal relicto.

Insatisfechos, el 29 de septiembre de 2025, los apelantes radicaron una *Moción de Reconsideración*, la cual fue denegada mediante *Orden* emitida el 6 de noviembre de 2025 y notificada el día siguiente. Inconformes aún, el 1 de diciembre de 2025, comparecieron ante nos mediante *Apelación*. La parte apelante le imputó al foro de instancia la comisión de los siguientes errores:

> **Erró el TPI al no dictar sentencia declaratoria determinando la titularidad de las participaciones alícuotas de Emilio y de Manuel a nombre de Georgina Carrión usando como razón del Código de Rentas Internas y al determinar las Escrituras Núm. 21 y 25 "no tuvieron el efecto de traspasar un interés propietario" en el inmueble a favor de Georgina Carrión Torres.**
>
> **Erró el TPI al concluir que la cesión era inválida por la falta de comparecencia de las viudas de los coherederos premuertos y**

**que las cesiones eran nulas por haberse otorgado sin "Relevo de Hacienda".**

**Erró el TPI al concluir con la desestimación de la demanda de división de bienes cuando, además de las participaciones que adquirió doña Georgina de sus sobrinos, existen otras participaciones sobre la cuales no hay controversia, que procede dividir sobre el mismo inmueble y que hay dinero consignado de la sucesión de doña Georgina Carrión consignado en el Tribunal, dejando a las partes desprovista de remedio.**

**Erró el Tribunal al no reconocer el derecho a la división de la comunidad, cometiendo un claro abuso de discreción.**

El 12 de diciembre de 2025, notificada el 15 de diciembre de 2025, este Tribunal dictó una *Resolución* mediante la cual le concedimos a la parte recurrida un término de treinta (30) días para presentar su alegato en oposición. Transcurrido el término, sin su comparecencia, damos por perfeccionado el recurso y procedemos a resolver.

## II.

### -A-

La sentencia declaratoria se ha definido como un mecanismo "remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales", siempre que se demuestre la existencia de un peligro real contra la parte que solicita la sentencia declaratoria. *Sánchez et al. v. Srio. De Justicia et al.*, 157 DPR 360, 383-384 (2002); *Charana v. Pueblo*, 109 DPR 641, 653 (1993). El Tribunal Supremo ha expresado que una solicitud de sentencia declaratoria tiene como finalidad emitir una decisión judicial sobre cualquier discrepancia en la interpretación de la ley. *Mun. Fajardo v. Srio. Justicia et al.*, 187 DPRA 245, 254 (2012). Tal remedio puede ser utilizado en procesos en los cuales "los hechos alegados demuestren que existe una controversia sustancial entre partes que tienen intereses legales adversos, sin que medie lesión previa de los mismos [...]". R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 5ta ed., San Juan, Ed. Lexis Nexis, 2010, pág. 560.

La Regla 59 de Procedimiento Civil, 32 LPRA Ap. V., R. 59, regula lo relacionado a las sentencias declaratorias. En específico, la Regla 59.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 59.1, dispone que, en los casos en los

cuales procede dictar sentencia declaratoria, "[e]l Tribunal de Primera Instancia tendrá autoridad para declarar derechos, estados y otras relaciones jurídicas, aunque se inste o pueda instarse otro remedio".

Por otra parte, la Regla 59.2 (a) de Procedimiento Civil, 32 LPRA Ap. V., R. 59.2, estipula que cualquier persona interesada en una escritura, un testamento, un contrato o cuyos derechos, estado u otras relaciones jurídicas se vean afectados por un precepto legal, una ordenanza municipal, un contrato o una franquicia, podrá solicitar una sentencia declaratoria. A su vez, la parte que solicita una sentencia declaratoria está sujeta al cumplimiento con los criterios de legitimación activa. *Mun. Fajardo v. Srio. Justicia et al.*, *supra*, págs. 254-255. Es decir, debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, y no abstracto e hipotético; (3) existe una relación causal razonable entre la acción que se ejercita y el daño alegado; y (4) la causa de acción debe surgir al amparo de la Constitución o de alguna ley. *P.I.P v. E.L.A. et al.*, 186 DPR 1 (2012).

Se ha consagrado que la sentencia declaratoria propicia seguridad y certidumbre a las relaciones jurídicas, tanto en el ámbito público, como en el privado. *Romero Barceló v. ELA*, 169 DPR 460, 507 (2006). Es por ello que, previo a dictar una sentencia declaratoria, el foro primario debe sopesar los intereses públicos y privados, por lo que "debe demostrarse que los intereses de la justicia serían bien servidos y que la sentencia que se dicte sea efectiva y adecuada. *Moscoso v. Rivera*, 76 DPR 481, 494 (1954).

**-B-**

La sucesión ha sido definida como "la transmisión de derechos y obligaciones del difunto a sus herederos". Art. 599 del Código Civil de 1930, 31 LPRA sec. 2081. Cuando existen dos o más herederos, se constituye una comunidad hereditaria, comprendida por todas las relaciones jurídicas patrimoniales del difunto, excepto aquellas que, por su naturaleza o contenido, se extinguen con la muerte del causante. *Vega Montoya v. Registrador*, 179 DPR 80, 87 (2010).

La comunidad hereditaria cesa de existir al momento de la partición de la herencia. Ello, confiere a cada heredero la propiedad exclusiva de los bienes que le hayan sido adjudicados. Art. 1021 del Código Civil de 1930, 31 LPRA sec. 2901. En lo aquí pertinente, la Sección 2054.05 de la Ley Núm. 1-2011, según enmendada, conocida como *Código de Rentas Internas de Puerto Rico de 2011*, 13 LPRA sec. 31165, dispone, entre otras cosas, que los Tribunales no podrán autorizar actos de división o ejecución sobre bienes de una herencia mientras no se haya acreditado el pago o depósito de las contribuciones correspondientes ante el Departamento de Hacienda.

Se ha establecido que, durante la vigencia de la comunidad hereditaria, los herederos no son titulares de los bienes particulares que componen la herencia, sino de una cuota en abstracto sobre todos los bienes que forman parte del caudal relicto. Según se ha aclarado, "los derechos a la sucesión de una persona se transmiten desde el momento de su muerte". Art. 603 del Código Civil de 1930, 31 LPRA sec. 2085. No obstante, **mientras no se realicen las operaciones de partición, ninguno de los herederos posee un derecho concreto o determinado sobre parte alguna de la herencia que le permita disponer libremente de ella**. *Herederos de Collazo v. Registrador*, 172 DPR 776, 784 (2007). En otras palabras, a pesar de que, previo a la partición, un heredero puede enajenar los derechos y acciones sobre su participación abstracta en el caudal, "**no puede enajenar o gravar un bien determinado que forme parte de la herencia**". *Osorio v. Registrador*, 113 DPR 36, 37-38 (1982).

Cónsono con lo anterior, el Art. 131 de la Ley del Registro de la Propiedad Inmobiliaria, 30 LPRA sec. 6186, prohíbe la inscripción de enajenaciones o gravámenes sobre cuotas específicas cuando estas no hayan sido previamente adjudicadas en la correspondiente partición de la herencia. A manera de excepción, el aludido artículo dispone que la adjudicación no será necesaria únicamente cuando: (1) comparecen todos los coherederos o interesados en enajenar o gravar la totalidad de su derecho hereditario; (2) todos los coherederos o interesados venden la totalidad de su derecho hereditario a favor de un comunero soltero o casado bajo el régimen de separación de bienes; (3) uno o

más de los coherederos transfiere su derecho hereditario o participación abstracta e indeterminada en la totalidad de la herencia; o (4) una persona haya adquirido todos los derechos hereditarios. *Íd.*

Asimismo, el Art. 134 de la Ley 210-2015, 30 LPRA sec. 6189, expresa que "[l]os herederos y legatarios no podrán inscribir a su favor bienes inmuebles o derechos reales sin que hubiesen inscrito previamente o soliciten a la vez la inscripción del título de sus causantes". Añade que "[**n]o se inscribirá el documento de partición de bienes hereditarios o de transferencia o gravamen del derecho hereditario si [...] no aparece previamente inscrito el derecho hereditario a nombre de los herederos**". *Íd.*

-C-

La legítima del cónyuge supérstite se materializa mediante una cuota viudal usufructuaria respecto a los bienes que componen el caudal relicto. *Clávelo Pérez v. Hernández García,* 177 DPR 822 (2010). El cónyuge supérstite tendrá derecho a una cuota, en usufructo, igual a la que por legítima corresponda a cada uno de sus hijos o descendientes no mejorados. Art. 761 del Código Civil de 1930, 31 LPRA sec. 2411. Cuando no existan descendientes o ascendientes legítimos, el Artículo 764 del Código Civil de 1930, 31 LPRA sec. 2414, consagra que "el cónyuge sobreviviente tendrá derecho a la mitad de la herencia, también en usufructo".

Los herederos tienen la facultad de satisfacer al cónyuge supérstite la parte de su usufructo, asignándole una renta vitalicia, los productos de determinados bienes o un capital en efectivo, procediendo de mutuo acuerdo. Art. 765 del Código Civil de 1930, 31 LPRA sec. 2415. Véase, también, *Clávelo Pérez v. Hernández García, supra*; *Colón Gutiérrez v. Registrador,* 114 DPR 850, 859 (8) (1983); *Cortés Córdova v. Cortés Rosario,* 86 DPR 117, 123 (1962). A esta forma de los herederos satisfacer la cuota usufructuaria al cónyuge supérstite se le denomina en derecho sucesorio como conmutación, conversión o sustitución del usufructo viudal. *Íd.* Esto sólo procederá por mutuo acuerdo de los herederos y, en su defecto, por virtud de mandato judicial. Artículo 765 del Código Civil de Puerto Rico de 1930, *supra*. **Mientras esto no**

**se realice, <u>todos los bienes de la herencia</u> estarán afectos al pago de la parte de usufructo que le corresponda al cónyuge supérstite.** *Íd.*

Ahora bien, el Tribunal Supremo ha resuelto que **para que queden adecuadamente protegidos los derechos del cónyuge supérstite, deberá valorizarse su cuota viudal tomando en consideración el valor de los bienes al momento de efectuarse la conversión o conmutación**. Colón Gutiérrez v. Registrador, 114 DPR 850 (1983); Clávelo Pérez v. Hernández García, *supra.* (Énfasis suplido).

Además, nuestro más alto foro ha enfatizado que ˝[e]l avalúo debe reflejar en todo momento valores reales para todos los elementos del activo del caudal, de manera que en su día no se perjudiquen unos interesados y se beneficien otros. *Fernández Marrero v. Fernández González,* 152 DPR 22 (2000).

**III.**

En el recurso que nos ocupa, los apelantes solicitan que revoquemos la *Sentencia* mediante la cual el foro de instancia desestimó su demanda sobre liquidación de comunidad hereditaria. Surge de la determinación apelada que el TPI denegó la solicitud instada por la parte apelante debido a que la titularidad del bien inmueble que forma parte del caudal relicto se encuentra en controversia. Particularmente, razonó que las escrituras mediante las cuales doña Georgina presuntamente adquirió la participación sobre el inmueble de sus difuntos hermanos, Manuel y Emilio Carrión Torres, no tuvieron el efecto de traspasar un interés propietario.

De entrada, recalcamos que, en el caso de epígrafe, la parte apelante solicita la partición de la comunidad hereditaria instituida tras el fallecimiento de su abuela, doña Georgina Carrión Torres. El caudal relicto de doña Georgina se encuentra compuesto por unas cuentas de banco, sobre cuya titularidad no existe controversia, y una propiedad inmueble, cuya titularidad permanece controvertida.

Conforme obra en el expediente, el inmueble en controversia se encuentra inscrito en el Registro de la Propiedad a favor de: (1) Emilio Carrión Torres, Jacinto Font Carrión, Manuel De Jesús Carrión Torres, quienes heredaron una

participación de Pedro Carrión y Monserrate Torres, respectivamente; (2) Carlos Edgar Chicón Carrión, Harold Alberto, Howard Augusto y José Raúl, todos de apellidos Chicón Tejeda, y Katherine y Sergio, ambos de apellidos Chicón Sepúlveda, quienes heredaron una participación de Héctor René Cruz Carrión; y (3) Alexandra Lorraine y Rebecca Ann, ambas de apellido Wisotsky, quienes heredaron una participación de Myrna Gladys Cruz Carrión.[1]

Los errores primero y segundo serán discutidos de manera conjunta, por estar dirigidos a establecer que el foro de instancia incidió al concluir que las Escrituras 21 y 25 no traspasaron un interés propietario sobre las participaciones de don Manuel y don Emilio.

Las apelantes aducen que el TPI erró al no decretar la titularidad de las participaciones alícuotas a favor de doña Georgina mediante sentencia declaratoria. En específico, sostienen que, a través de las Escrituras 21 y 25, los únicos herederos de don Emilio y don Manuel cedieron sus derechos hereditarios sobre el inmueble. Manifiestan que, a pesar de que los negocios jurídicos no lograron acceso al Registro de la Propiedad, efectivamente traspasaron las participaciones de don Manuel y don Emilio a favor de doña Georgina. Como consecuencia, razonan que doña Georgina era titular extraregistral de las aludidas participaciones.

Como regla general, mientras no se lleve a cabo la partición del caudal relicto, los herederos solo poseen una participación abstracta sobre los bienes de la herencia. Por tanto, hasta que no se complete la partición, ningún heredero puede enajenar bienes específicos. Consecuentemente, el Art. 134 de la Ley 210-2015, *supra*, expresamente prohíbe la inscripción de participaciones específicas, si no aparece previamente inscrito el derecho hereditario a nombre de los alegados herederos.

Contrario a lo argumentado por las apelantes, los presuntos herederos de don Manuel y don Emilio no cedieron una cuota abstracta de las respectivas herencias, sino las participaciones de los causantes en el bien inmueble. Es

---

[1] Todos los titulares registrales, con excepción de aquellos mencionados en el primer inciso, forman parte de la Sucesión Georgina Carrión Torres.

decir, dispusieron de un bien específico que formaba parte de los caudales relictos de los difuntos, previo a su partición. Distinto sería si hubieran traspasado una participación abstracta sobre las herencias de los causantes. Peor aún, se desprende del expediente que los herederos de don Manuel y don Emilio enajenaron un bien específico de la herencia, sin contar con la comparecencia de todos los herederos forzosos.

Por otro lado, las apelantes manifiestan que el foro de instancia erró al concluir que las cesiones de derechos eran nulas debido a la incomparecencia de las viudas. Reiteran que la comparecencia de las viudas no era necesaria, ya que las participaciones sobre el inmueble no serían adjudicadas a favor de las cónyuges supérstites por constituir bienes privativos de los causantes.

En cuanto a la comunidad hereditaria de don Manuel, obra en el expediente un Testamento Abierto, otorgado el 19 de diciembre de 1983. Mediante el mismo, don Manuel reconoció como herederas a sus hijas, Ayleen e Ileana Carrión Maldonado, y a su esposa, Laura Maldonado Rodríguez. Surge del testamento que don Manuel nombró a su esposa, doña Laura, como su albacea-contador partidor, "autorizándola a realizar todos los actos de ley inherente a la partición de los bienes hereditarios de EL TESTADOR al momento de su muerte [...]".[2] En otras palabras, su cónyuge supérstite, no tan solo figuraba entre sus herederas forzosas, sino que conforme a la voluntad expresa de su esposo, era la persona autorizada para llevar a cabo la partición. Se desprende de lo anterior que las hijas de don Manuel realizaron un acto de partición de la herencia, sin contar con el aval de la persona designada como albacea-contador partidor.

Respecto a la comunidad hereditaria de don Emilio, surge de la Certificación Negativa del Registro de Testamentos que murió intestado. Además, se desconoce si sus herederos presentaron una petición sobre declaratoria de herederos. No obstante, la parte apelante expresó que, por información y

---

[2] *Véase*, SUMAC, Entrada Núm. 61, Anejo 6.

creencia, su comunidad hereditaria se encontraba compuesta por su hijo, Emilio Carrión Matos, y su presunta esposa, María Jesús Matos Ríos.

Conforme al Código Civil de 1930, la legítima del cónyuge supérstite se materializaba a través de una cuota viudal usufructuaria. El Art. 765 del Código Civil de 1930, *supra*, claramente disponía que mientras no se efectuara la conversión o conmutación, todos los bienes del caudal relicto permanecerían gravados a favor del pago de la cuota viudal usufructuaria. Ello, sin distinción entre bienes privativos o gananciales.

Cónsono con lo anterior, las señoras Maldonado Rodríguez y Matos Ríos, tenían un derecho limitado sobre los bienes de los caudales relictos de sus esposos. Hasta que no se llevara a cabo la conversión o conmutación de la cuota viudal usufructuaria, los demás herederos no podían enajenar bienes específicos del caudal relicto.

El hecho de que un bien fuera privativo no eximía a los herederos de tener que esperar hasta la conmutación de la cuota viudal usufructuaria y la partición de la herencia, previo a enajenar bienes específicos del caudal relicto. Dicho de otra manera, al momento de la cesión de derechos hereditarios, las participaciones de don Emilio y don Manuel se encontraban gravadas, ya que no se había realizado la conversión o conmutación de la cuota viudal usufructuaria. Es por ello que, ante la incomparecencia de las viudas en las Escrituras 21 y 25, así como la ausencia de evidencia sobre la conmutación o conversión de la cuota viudal usufructuaria previo a la cesión de derechos hereditarios, el foro de instancia se encontraba imposibilitado de determinar la validez de los negocios jurídicos.

A su vez, la parte apelante esboza que el TPI incidió al determinar que las escrituras eran nulas por haberse otorgado sin la presentación de los relevos contributivos emitidos por el Departamento de Hacienda.

El Código de Rentas Internas estipula que los tribunales no podrán autorizar actos de ejecución o división de la herencia mientras no se haya acreditado el pago o depósito de las contribuciones correspondientes ante el Departamento de Hacienda. Es decir, ningún Tribunal podrá ordenar la

liquidación de bienes hereditarios sin los documentos acreditativos de las deudas que requieren un pago preferente o si el caudal está sujeto a algún gravamen.

Contrario a los procedimientos sobre partición judicial, las cesiones de derechos hereditarios constituyen negocios jurídicos que no requieren autorización del Tribunal y, por tanto, su celebración no se encuentra atada a la presentación de un relevo contributivo. El cumplimiento con tal requisito corresponde al procedimiento de división o ejecución de caudal relicto presentado ante el TPI. Por tanto, concluir que las Escrituras 21 y 25 son inválidas por el mero hecho de haber sido otorgadas sin los relevos contributivos correspondientes resulta contrario a derecho. Sin embargo, tal error no incide sobre el hecho de que las Escrituras 21 y 25 son inválidas, debido a que fueron otorgadas sin la comparecencia de todos los herederos forzosos, a saber, las cónyuges supérstites.

Finalmente, resta determinar si el foro de instancia incidió al desestimar la totalidad del pleito, sin tomar en consideración que no existe controversia sobre la titularidad de los fondos que permanecen consignados en el Tribunal.

Precisamos que el TPI cometió un error al desestimar el pleito sin emitir un pronunciamiento en cuanto al dinero de las cuentas de banco de doña Georgina, para el cual se realizó la Planilla de Caudal Relicto y se obtuvo el Relevo de Hacienda. Conforme surge de la *Sentencia*, el foro de instancia centró su discusión en la invalidez de las escrituras sobre cesión de derechos y obvió por completo la existencia de los fondos que permanecen consignados en el Tribunal.

Tras un examen sosegado del expediente, somos del criterio que no existe impedimento alguno para continuar con los procedimientos, únicamente en torno a la adjudicación de los fondos consignados. A pesar de existir una controversia sobre la titularidad del bien inmueble, ello no representa un obstáculo para realizar la partición parcial de la Sucesión Georgina Carrión Torres. Por tanto, nos vemos obligados a revocar en parte la determinación del foro primario, toda vez que no procedía desestimar el pleito en su totalidad. El

TPI deberá continuar con los procedimientos, encaminados exclusivamente a la partición de los fondos consignados.

**IV.**

Por los fundamentos que anteceden, se *confirma* en parte y se *revoca* en parte la *Sentencia* apelada. Se *confirma* en lo relativo a que el foro de instancia actuó correctamente al determinar que no procedía la partición del bien inmueble, debido a que las escrituras sobre cesión de derechos no lograron traspasar un interés propietario. Por otra parte, se *revoca* en parte, porque no procedía desestimar la causa de acción en su totalidad. El TPI deberá continuar con los procedimientos, a los únicos efectos de lograr la partición parcial del caudal relicto de Georgina Carrión Torres, para lo cual se llevó a cabo el procedimiento para la liberación de los fondos consignados, conforme a derecho.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones